553 F.Supp. 518 (1982)
CORONET DODGE, INC., Plaintiff,
v.
Fred R. SPECKMANN, et al., Defendants.
No. 81-724C(3).
United States District Court, E.D. Missouri, E.D.
September 30, 1982.
As Amended November 4, 1982.
On Cross-Motion For Summary Judgment December 16, 1982.
*519 Schramm, Newman, Pines & Freyman, Paul H. Schramm, Clayton, Mo., for plaintiff.
Diekemper, Hammond & Shinners, Cary Hammond, St. Louis, Mo., for defendants.

MEMORANDUM AND ORDER
FILIPPINE, District Judge.
This matter is before the Court on cross-motions for summary judgment. Both sides have filed memoranda of law and have diligently provided the Court with recent authority as courts continue to render opinions on the rather new issue presented in this case.
At issue in this action is the retroactive application of the constitutionality of Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), 29 U.S.C. §§ 1381(a), 1461(e)(2)(A). These sections were enacted on September 26, 1980; § 1381(a) establishes withdrawal liability for those employers which withdraw from a multiemployer pension plan, and § 1461(e)(2)(A) establishes an *520 effective date for § 1381(a) of April 29, 1980. Plaintiff seeks a declaration that the retroactive application of § 1381(a) violates the Due Process Clause of the Fifth Amendment. Defendant has counter-claimed for the amount of withdrawal liability assessed against plaintiff pursuant to § 1381(a).
The facts in this action are not in dispute. Plaintiff was a contributor to a multiemployer pension plan and was in corporate existence from June 19, 1973, to July 20, 1981, in the business of selling automobiles. On June 30, 1980, plaintiff voluntarily ceased doing business while still in a solvent condition. It was on this day also that plaintiff withdrew from the multiemployer pension plan. Plaintiff sold its assets but did not delegate any obligations to make contributions of any kind to the pension trust. At the time of plaintiff's withdrawal ERISA assessed no automatic withdrawal liability against plaintiff unless the plan to which it had contributed were to become insolvent within five years from the date of withdrawal. Retroactive application of the MPPAA, however, caused plaintiff to be saddled with immediate withdrawal liability in the amount of $24,988.00 on March 4, 1981. Plaintiff filed this action in June, 1981, seeking a declaration that the MPPAA is unconstitutional, as applied to employers which withdrew from multiemployer plans between April 29, 1980, and September 26, 1980. Plaintiff has thus far refused to make any of the scheduled withdrawal liability payments imposed by defendants and did not initiate statutory arbitration proceedings to contest the amount of its assessed liability.
Plaintiff's constitutional challenge to the retroactive application of the MPPAA asserts that the statute, as applied, deprives plaintiff of property without due process of law. The essential determination in analyzing retroactive statutes under the Due Process Clause is whether the legislature acted in an irrational or arbitrary manner. Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 15-16, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976). Thus, the ultimate question is whether the legislature used a rational means to obtain a legitimate end. Id. at 18, 96 S.Ct. at 2893. The burden is upon the party seeking to have legislation declared unconstitutional to prove that the legislature acted irrationally, and valid enactments of Congress are accorded a presumption of constitutionality, especially when their objective is to "adjust the burdens and benefits of economic life...." Id. at 15, 96 S.Ct. at 2892. Any other rule would return the judiciary to the freewheeling days of Lochner v. New York, 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937 (1905).
The Seventh Circuit has adopted a four part analysis to be used in analyzing the constitutionality of retroactive application of legislative enactments. In Nachman v. PBGC, 592 F.2d 947, 960 (7th Cir.1979), aff'd, 446 U.S. 359, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980), the Court examined: 1) the reliance interests of the parties; 2) whether the impairment of the private interest is effected in an area previously subjected to regulatory control; 3) the relative equities of imposing the legislative burden; and, 4) whether the statute contains provisions designed to limit or moderate the impact of the burdens. The Supreme Court, although affirming Nachman on different grounds, apparently gave its implicit approval to the Seventh Circuit's four part test. 446 U.S. at 367-68, n. 12, 100 S.Ct. at 1729, n. 12; see also A-T-O, Inc. v. PBGC, 634 F.2d 1013, 1024 (6th Cir.1980) (reading Supreme Court's decision as a sub silentio affirmance of Seventh Circuit's constitutional analysis). Thus, the Court will analyze the constitutionality of retroactive application of the MPPAA against the Nachman four part test.
Under the first element of the Nachman test the Court must examine the reliance interests of the parties. Essentially, the questions under this first element involve whether plaintiff could have pursued a different course of action had it not relied on the law as it existed on June 30, 1980, and would this alternate conduct have mitigated the burden on plaintiff. Plaintiff states that it could have restructured its *521 asset sale to take into account the MPPAA obligations. However, to assume that a buyer would have assumed these obligations without a commensurate reduction in the purchase price would be contrary to even elementary notions of business sense. Plaintiff also argues that it could have ceased its operations and withdrawn earlier had it not relied on pre-MPPAA law. However, this argument is entirely speculative for it is impossible to say that plaintiff could have conducted an open market transaction prior to the time it did. More importantly, Congress' intent in making MPPAA retroactive was to prevent employers from withdrawing in droves from multiemployer plans once they anticipated the passage of MPPAA. See Peick v. PBGC, 539 F.Supp. 1025, 1053-54 (N.D.Ill.1982). To adopt plaintiff's argument would frustrate Congress' intent and short circuit the analysis of whether Congress acted arbitrarily in setting a retroactive effective date for MPPAA.
Analysis of the reliance interests, moreover, is not a one-sided proposition. The Court must consider the reliance interests of those employees who depend upon the existence of a solvent trust fund at their retirement. Congress was extremely concerned about the problem of employer withdrawal from multiemployer plans especially in declining industries. See Pension Plan Termination Issues: Hearing Before the Subcomm. on Oversight of the House Comm. on Ways and Means, 95th Cong., 2d Sess. (1978) at 22. Thus, Congress weighed the interests of the employees and contributing employers and found the former to outweigh the latter. This determination is neither arbitrary nor irrational. Nachman, 592 F.2d at 961-62; Peick, 539 F.Supp. at 1041-44, 1052-56.
The second element of the Nachman analysis is closely related to the first and asks whether the interest impaired is in an area previously subject to regulatory control. In essence, this element goes to the reasonableness of the parties' reliance, especially the party on whom the legislative burden is imposed. There is no question that plaintiff, in participating in a multiemployer plan, had been subjected to regulatory control prior to MPPAA. Peick, 539 F.Supp. at 1044-46. Thus, under the law as it existed in June, 1980, plaintiff still was subject to withdrawal liability if the pension trust became insolvent within five years. Although MPPAA substantially modifies prior law in this respect, the fact remains that "[t]hose who do business in the regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legitimate end." FHA v. The Darlington, Inc., 358 U.S. 84, 91, 79 S.Ct. 141, 146, 3 L.Ed.2d 132 (1958). Accordingly, the Court believes that MPPAA passes this element of the Nachman test as well.
An examination of the equities of imposing the legislative burden is the third part of the Nachman test. The interests of three groups must be considered in analyzing the MPPAA under this part of the test. First, plaintiff, a withdrawn employer, is faced with the burden of $25,000.00 worth of withdrawal liability. This is an obvious and irrefutable burden on plaintiff. However, this must be weighed against the possible burdens borne on non-withdrawing employers and on the employees covered by the pension trust. If withdrawing employers do not pay withdrawal liability, the remaining employers must assume a larger percentage of the obligation to the fund. H.R.Rep. No. 96-869, Part I, 96th Cong. 2d Sess. (1980) at 60, U.S.Code Cong. & Admin. News 1980, p. 2918. Congress was ultimately concerned that a domino effect could threaten the security of multiemployer plans as remaining employers became unable to shoulder increased obligations to the plans. Id. Establishing withdrawal liability also protects the employees who look to the pension fund as the source of their retirement income. Thus, the Court believes that the balance of equities favors the constitutionality of retroactive application of the statute. It protects the interests of pensioners and non-withdrawing employers and also maintains the security of the pension trusts. It does this at the expense *522 of the party whose conduct threatens the harm, the withdrawing employer. Peick, 539 F.Supp. at 1047.
Finally, the Court must consider whether MPPAA contains provisions that mitigate or moderate the impact of the burden on plaintiff. Nachman, 592 F.2d at 960. The Court notes two mitigating factors that exist in MPPAA. First, the statute provides a formula which produces a de minimus amount which is deducted from the amount of withdrawal liability computed under the statute. 29 U.S.C. § 1389(a). In this matter, plaintiff's withdrawal liability was reduced by a de minimus amount of $50,000.00. Second, unlike the forerunner of MPPAA, the current statute does not require payment of withdrawal liability in a lump sum, but rather allows for installment payments. 29 U.S.C. § 1399(c). Thus, the statute does contain mitigating provisions designed to lessen the hardship wrought by the imposition of withdrawal liability, satisfying the last element of the Nachman test.
Plaintiff makes one final challenge to MPPAA by contending that the sale of assets provision in 29 U.S.C. § 1384 is a safe harbor provision available to post-enactment withdrawing employers but not to pre-enactment withdrawing employers. Section 1384 offers a scheme whereby a participating employer who withdraws pursuant to a cessation of business due to a sale of assets may structure the sale so that the purchaser picks up the pension plan obligation. Under this provision, the withdrawing employer is not subject to withdrawal liability  in effect the section deems the seller of assets not to have withdrawn. This section obviously is unavailable to a pre-enactment seller of assets because it could not have complied with the section's provisions, not having known of them before the enactment date of the statute.
Plaintiff's argument on this point, however, is conceptually similar to its reliance argument discussed earlier. Plaintiff maintains that the statute's safe harbor provision, had it been available to plaintiff, would have eliminated the burden of withdrawal liability on plaintiff. This argument again fails to consider that no purchaser of assets would pay the same price for acquiring a business with obligations to the pension trust as it would for acquiring a business with no such obligations. Thus, plaintiff's argument on this point does not compel the Court to conclude that MPPAA, as applied, is unconstitutional.
Therefore, after reviewing MPPAA under the Nachman four part analysis, the Court concludes that plaintiff has failed to overcome the statute's inherent presumption of constitutionality. Usery, 428 U.S. at 15, 96 S.Ct. at 2892. Although plaintiff has demonstrated that hardships will be visited upon it by retroactive application of MPPAA, the Court does not consider that Congress, in adjusting the economic burdens associated with retirement security, has acted in an irrational or arbitrary matter. Thus, the Court holds the retroactive application of MPPAA to be constitutional. See also Republic Industries v. Central Pennsylvania Teamsters Pension Fund, 534 F.Supp. 1340, 1349-50 (E.D.Pa.1982). Accordingly, the Court will grant defendants' motion for summary judgment and deny plaintiff's motion for summary judgment on plaintiff's complaint.
There remains before the Court the question of defendants' counterclaim for the amount of plaintiff's withdrawal liability and defendants' request for attorneys' fees. Defendants, in their counterclaim, also seek liquidated damages under 29 U.S.C. §§ 1451(b), 1132(g)(2), six per cent interest on the principal amount from January 1, 1981, and attorneys' fees. Plaintiff, in its answer to the counterclaim admits nearly all of defendants' allegations and raises the sole defense of the unconstitutionality of MPPAA. Thus, the Court will grant defendants' motion for summary judgment on the counterclaim and deny plaintiff's motion for summary judgment addressed thereto. However, the Court will not issue its order regarding summary judgments until full resolution of the amount due on the counterclaim and defendants' request for attorneys' fees. To this end, the Court will order the parties to brief the question of *523 the amount due defendants on their counterclaim and request for attorneys' fees. At such time as the Court computes these amounts with the benefit of the parties' memoranda, the Court will issue its order disposing of the entire matter.
Accordingly,
IT IS HEREBY ORDERED that defendants shall submit to the Court by October 8, 1982, a memorandum and any supporting materials concerning the amount due on their counterclaim and their request for attorneys' fees.
IT IS FURTHER ORDERED that plaintiff shall submit to the Court by October 15, 1982, a memorandum in response to defendants' memorandum concerning the amount due on defendants' counterclaim and their request for attorneys' fees.

On Cross-Motions For Summary Judgment
This matter is before the Court on the parties' cross-motions for summary judgment. In its memorandum and order of September 30, 1982, the Court resolved the legal issues of liability and indicated it would grant defendants' motions for summary judgment with regard to plaintiff's complaint and defendants' counterclaim. The Court, however, asked for briefs from the parties on the issue of what amount defendants should recover on their counterclaim.
Plaintiff admits that its withdrawal liability as statutorily assessed is $24,988. Plaintiff failed to initiate timely an arbitration proceeding to contest the amount of its liability. Under 29 U.S.C. § 1132 defendants are entitled to recover the principal amount of liability, plus 20 percent liquidated damages, plus interest, plus attorneys' fees. Accordingly,
IT IS HEREBY ORDERED that the plaintiff's motions for summary judgment be and are DENIED and the defendants' motions for summary judgment be and are GRANTED.
IT IS FURTHER ORDERED that plaintiff's complaint be and is DISMISSED with prejudice.
IT IS FURTHER ORDERED, ADJUDGED and DECREED that defendants have judgment against plaintiff on defendants' counterclaim in the amount of $24,988, plus six percent per annum simple interest from January 1, 1981, plus statutory liquidated damages in the amount of $4,997.60, plus attorneys' fees of $4,177.50.