565 F.Supp. 469 (1983)
Fred R. SPECKMANN, Clarence F. Hanneken, R. Bruce Wynne, Edgar M. Hayward, Monsignor Carl C. Poelker, in their representative capacity as Trustees of the District No. 9, I.A.M.A.W. Pension Plan, Plaintiffs,
v.
PADDOCK CHRYSLER PLYMOUTH, INC., a Missouri corporation, Defendant.
No. 82-0888-C(C).
United States District Court, E.D. Missouri, E.D.
May 6, 1983.
Modified Opinion on Motions for Summary Judgment May 31, 1983.
Opinion on Motion for Modification of Judgment June 21, 1983.
*470 *471 Cary Hammond, Clayton, Mo., for plaintiffs.
Gerald Tockman, St. Louis, Mo., for defendant.

MEMORANDUM
MEREDITH, District Judge.
This matter is before the Court upon the cross-motions of plaintiffs and defendant for summary judgment. The issue presented by the parties' motions is whether retroactive application of the MPPAA, 29 U.S.C. §§ 1381(a) and 1461(e)(2)(A), as applied to the defendant herein, violates the Fifth Amendment to the United States Constitution. For the reasons set forth below, plaintiffs' motion for summary judgment will be granted. Defendant's motion will be denied.
Plaintiffs bring this action under the Employment Retirement Security Act of 1974, ("ERISA") 29 U.S.C. § 1001 et seq., as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA") 29 U.S.C. § 1381, et seq. Plaintiffs seek to collect withdrawal liability payments from defendant under the terms of the MPPAA. This Court has jurisdiction pursuant to 29 U.S.C. § 1451(c).
The relevant facts in this case are not in dispute. Plaintiffs constitute the Joint Board of Trustees of the District No. 9, International Association of Machinists and Aerospace Workers Pension Plan ("the Plan"). The Plan is a multiemployer pension plan within the meaning of ERISA, as amended by the MPPAA, 29 U.S.C. § 1301(a)(3). Defendant Paddock Chrysler Plymouth, Inc., a Missouri corporation, was formerly a party to successive collective bargaining agreements with District No. 9, International Association of Machinists & Aerospace Workers ("I.A.M.A.W."). Under the terms of the collective bargaining agreements, defendant was obligated to contribute to the Trustees of the Plan on behalf of certain of defendant's employees.
On May 7, 1980, defendant voluntarily terminated its dealership agreement with Chrysler Corporation by giving Chrysler thirty (30) days notice of such termination. Defendant commenced winding up its affairs by selling its assets. Defendant permanently ceased all covered operations under the Plan on August 22, 1980 and thus completely withdrew from the Plan within the meaning of 29 U.S.C. § 1381 as of that date. Defendant has permanently ceased to have an obligation to contribute under the Plan.
Congress enacted the MPPAA on September 26, 1980 but established April 29, 1980 as the effective date of its withdrawal liability provisions. See 29 U.S.C. § 1461(e)(2)(A). The pertinent provisions of that Act obligate Plan trustees to determine if an employer has withdrawn from a pension plan and, if so, to determine the amount of an employer's withdrawal liability, to notify the employer of the amount of that liability and to collect that amount from the employer. 29 U.S.C. § 1382. The MPPAA mandates that all disputes pertaining to the amount of an employer's withdrawal liability must be resolved through arbitration. 29 U.S.C. § 1401(a)(1). The Act further provides that the employer must make the contested withdrawal liability payments pending resolution of the dispute through arbitration. 29 U.S.C. § 1401(d). Finally, the MPPAA provides that, in the event arbitration is not initiated, the demanded payments become due and payable and the plan sponsors may bring an action in court for collection. 29 U.S.C. § 1401(b)(1).
Pursuant to the aforesaid provisions of the MPPAA, plaintiffs, as the Plan sponsors, determined that defendant had completely withdrawn from the Plan. By a notice and payment schedule dated March 4, 1981, plaintiffs notified defendant of the amount of its alleged withdrawal liability, provided it with a schedule of liability payments, and demanded payment in accordance with the schedule. Plaintiffs contend *472 that the amount of withdrawal liability currently due and owing is $50,464.33 plus interest.
Defendant has denied all liability for withdrawal liability payments, has refused to make any such payments, and has declined plaintiffs' request to engage in arbitration. Defendant seeks a declaratory judgment that the provisions of the MPPAA violate the Fifth Amendment to the United States Constitution to the extent that they create withdrawal liability for an employer who withdrew from a multiemployer pension plan prior to the MPPAA's date of enactment (Sept. 26, 1980), but subsequent to the effective date of its withdrawal liability provision (April 26, 1980). Defendant further seeks an injunction enjoining plaintiffs from taking any action to collect withdrawal liability against it.
Defendant attacks the validity of the legislation on three separate grounds. Defendant contends that retroactive application of the Act's withdrawal liability provisions violates the due process clause of the Fifth Amendment, the takings clause of the Fifth Amendment, and unconstitutionally impairs its right to contract. Defendant's arguments will be addressed in that order.
In making a determination as to whether retroactive application of the MPPAA violates the due process clause to the Fifth Amendment, this Court must uphold the legislation if it constitutes a rational means for achieving a legitimate end. Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 18, 96 S.Ct. 2882, 2893, 49 L.Ed.2d 752 (1976). In other words, defendant must overcome the presumption of constitutionality and prove that the legislature acted in an arbitrary and irrational manner. Id. at 15, 96 S.Ct. at 2892.
This Court is of the opinion that defendant has failed to prove that retroactive application of the MPPAA violates the due process clause. The Seventh Circuit has adopted a four part test to analyze the constitutional validity of retroactive legislation. In Nachman Corp. v. PBGC, 592 F.2d 947, 960 (7th Cir.1979), aff'd, 446 U.S. 359, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980)[1] the Court analyzed the following criteria: 1) the reliance interests of the parties affected, 2) whether the impairment of the private interest is effected in an area previously subject to regulatory control, 3) the equities of imposing the legislative burdens, and 4) the inclusion of statutory provisions designed to limit and moderate the impact of the burden. Id. at 960.
Another court in this district has recently rendered an opinion in which it thoroughly analyzed the constitutionality of the retroactive provisions at issue in accordance with the factors set forth in Nachman. See Coronet Dodge, Inc. v. Speckmann, 553 F.Supp. 518 (E.D.Mo.1982), appeal pending, No. 82-2554 (8th Cir.). This Court finds the reasoning of Coronet Dodge persuasive. For the reasons set forth in that opinion, this Court holds that retroactive application of the MPPAA as applied to the defendant herein, does not violate the due process clause of the Fifth Amendment. See also, Textile Workers Pension Fund v. Standard Dye & Finishing Co., Inc., 549 F.Supp. 404 (S.D.N.Y.1982); Peick v. PBGC, 539 F.Supp. 1025 (N.D.Ill.1982). Cf. Shelter Framing Corp. v. Carpenters Pension Trust, 543 F.Supp. 1234 (C.D.Cal.1982).
Defendant also argues that retroactive application of the MPPAA violates the Fifth Amendment because it constitutes a taking of private property for public use without the payment of just compensation. This Court does not agree. The takings clause presumes that the government has, in some manner, interfered with a private right or interest in specific, tangible property. See, e.g., United States v. Security Industrial Bank, ___ U.S. ___, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982). Thus, a takings clause analysis focuses on whether the character and extent of the governmental intervention compels the government to compensate the claimant for the deprivation *473 of his interest in that property. Id.; Penn Central Transportation Co. v. New York City, 438 U.S. 104, 124-25, 98 S.Ct. 2646, 2659-2660, 57 L.Ed.2d 631 (1978). The MPPAA does not deprive employers of any interest or right in specific, tangible property. Therefore, the fundamental premise underlying the takings clause, and the analyses thereunder, are totally inapposite to the regulation at issue. See also, Peick v. PBGC, supra at 1040 n. 30.
However, even assuming arguendo that the defendant has a protectible property interest for purposes of a takings clause analysis, the MPPAA does not violate the takings clause. "The Takings Clause ... preserves governmental power to regulate, subject only to the dictates of `justice and fairness'." Andrus v. Allard, 444 U.S. 51, 65, 100 S.Ct. 318, 327, 62 L.Ed.2d 210 (1979). In making a determination as to whether a governmental regulation is consistent with the dictates of justice and fairness, the Supreme Court has held that the following factors should be considered: 1) the economic impact of the regulation on the claimant; 2) the extent to which the government has interfered with distinct investment-backed expectations; and 3) the character of the governmental action. Penn Central Transportation Co. v. New York City, supra 438 U.S. at 124-25, 98 S.Ct. at 2659-2660.
Although couched in different language, these factors involve the same substantive considerations as those set forth in Nachman. Therefore, those substantive considerations which reflect that the MPPAA comports with due process also dictate that the Act does not unconstitutionally deprive defendant of private property for public use without just compensation.
Defendant's final argument is that the MPPAA unconstitutionally impairs its right to contract. This Court's holding as to the due process and takings clause issues is dispositive. Because the contract clause of Article I, § 10 of the Constitution applies only to state legislation, Nachman Corp. v. PBGC, supra at 959, the principles underlying that clause apply to federal legislation only to the extent they are incorporated into the Fifth Amendment. A-T-O, Inc. v. PBGC, 634 F.2d 1013, 1024 (6th Cir. 1980). Therefore, because the MPPAA, as retroactively applied to defendant herein, does not violate the due process or takings clauses of the Fifth Amendment, it does not unconstitutionally impair defendant's right to contract, as those principles are incorporated into the Fifth Amendment.
In summary, defendant has failed to overcome the statute's presumption of constitutionality. This Court finds that the MPPAA, as retroactively imposed upon defendant, does not deprive defendant of property without due process of law, take its property without just compensation or unconstitutionally impair its right to contract. Accordingly, defendant's motion for summary judgment will be denied.
It is undisputed that defendant has completely withdrawn from the Plan within the meaning of the MPPAA, 29 U.S.C. § 1381. Defendant's sole defense to this action for payment of withdrawal liability is that the Act is unconstitutional.[2] Because of this Court's disposition of the constitutional issue, there is no question that defendant is required to tender withdrawal liability payments to plaintiffs. Therefore, plaintiffs' motion for summary judgment will be granted insofar as they seek this Court's judgment that defendant is legally liable to the Plan for withdrawal contributions under the terms of the MPPAA.
*474 However, the amount of defendant's withdrawal liability is still at issue. The MPPAA, 29 U.S.C. § 1132(g)(2) provides that:
"the court shall award the plan
(A) the unpaid contributions,
(B) interest on the unpaid contributions,
(C) an amount equal to the greater of
(i) interest on the unpaid contributions, or
(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent ... of the amount determined by the court under subparagraph (A),
(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
(E) such other legal or equitable relief as the court deems appropriate."
The parties dispute the amount of unpaid contributions due and the interest rate to be applied. In addition, it is not clear at this point whether plaintiffs are entitled to liquidated damagesit appears that the Plan did not adopt a provision for liquidated damages until after defendant's liability to the Plan attached. Finally, plaintiffs have not submitted a schedule setting forth attorneys fees. This Court will not issue its order regarding the summary judgment motions until these disputes have been resolved. To that end, the Court will order the parties to submit briefs on these issues. The Court will withhold its order disposing of the motions for summary judgment until such time as the Court can determine the amounts due and owing to plaintiffs. Accordingly,
IT IS HEREBY ORDERED that plaintiffs shall submit to the Court by May 16, 1983, a memorandum and any supporting materials concerning the amount due on their complaint, including attorneys' fees.
IT IS FURTHER ORDERED that defendant shall submit to the Court by May 23, 1983, a memorandum in response to plaintiffs' memorandum concerning the amount due on the complaint, including attorneys' fees.

ON MOTIONS FOR SUMMARY JUDGMENT
This matter is before the Court upon the parties' cross-motions for summary judgment. By memorandum dated May 6, 1983, this Court resolved the legal issues concerning defendant's legal liability under the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1381 et seq. The Court indicated it would grant plaintiffs' motion for summary judgment and asked the parties to submit legal briefs with respect to the amount of defendant's withdrawal liability under the MPPAA.
The MPPAA provides that if an employer fails "to make any withdrawal liability payment within the time prescribed [then it] shall be treated as a delinquent contribution (within the meaning of section 1145 of this title)." 29 U.S.C. § 1451(b). The Act further provides that in the event a fiduciary brings action "to enforce § 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan
(A) the unpaid contributions,
(B) interest on the unpaid contributions,
(C) an amount equal to the greater of
(i) interest on the unpaid contributions, or
(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
(E) such other legal or equitable relief as the court deems appropriate.
For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1132(g)(2).

Unpaid contributions
Plaintiffs have assessed withdrawal liability against defendant in the sum of $50,464.33. *475 Defendant does not contest the accuracy of that calculation under the terms of the statute. Accordingly, this Court will award the plan unpaid contributions in the sum of $50,464.33.

Interest 
The provisions of Section 1132(g)(2) mandate that, in the absence of an interest rate provided under the plan, the Court must assess interest at the rate prescribed under section 6621 of Title 26.[1] The plan does not provide for an interest rate to be assessed against delinquent contributions. The interest rate set by the Secretary of the Treasury of the United States under 26 U.S.C. § 6621 was 12% between April 1, 1981 and January 31, 1982, Rev.Rul. 79-366; 20% from February 1, 1982 to December 31, 1982, Rev.Rul. 81-260; and 16% effective January 1, 1983 to the present, Rev.Rul. 82-182. Interest will be assessed on the delinquent payments accordingly.

Interest or Liquidated Damages 
Subpart (C) is, in effect, a double interest provision. That subpart provides that, in addition to the interest assessed under subpart (B), the Court shall award the greater of interest on the unpaid contributions or liquidated damages provided for under the plan. Although defendant was assessed withdrawal liability under the plan on January 1, 1981, the plan did not contain a liquidated damage provision until January 21, 1981. See Section 12.04, Amendments to the District No. 9, International Association of Machinists and Aerospace Workers Pension Plan. That section of the amendment to the plan does not provide for retroactive application or effect and this Court will not apply it retroactively.[2] Therefore, plaintiffs cannot obtain judgment against defendant under subpart (B)(ii) for liquidated damages of 20%. However, plaintiffs are entitled to double interest as provided for under section 1132(g)(2)(C)(i).

Attorney's Fees and Costs 
Plaintiffs seek $3,212.50 as and for attorney's fees and $72.60 in costs. This Court is of the opinion that the fees requested are reasonable and will, accordingly, grant attorney's fees in that amount, together with costs.[3] Accordingly,
IT IS HEREBY ORDERED that plaintiffs' motion for summary judgment be and is hereby granted and defendant's motion for summary judgment is hereby denied.
IT IS FURTHER ORDERED that defendant's counterclaim against plaintiffs is hereby dismissed with prejudice.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that plaintiffs have judgment against defendant for unpaid contributions in the amount of $50,464.33; interest on the unpaid contributions to be calculated at the rate of 12% between April 1, 1981 and January 31, 1982, 20% from February 1, 1982 to December 31, 1982, and 16% from January 1, 1983 until such time as the Secretary of the Treasury may prescribe different rates under 26 U.S.C. § 6621, and at such future rates as the Secretary of the Treasury may prescribe until the date of payment, said interest to be doubled; attorney's fees in the amount of $3,212.50; and costs in the sum of $72.60.

ON MOTION FOR MODIFICATION OF JUDGMENT
This matter is before the Court upon defendant's motion for modification of *476 judgment. For the reasons set forth below, this motion will be granted in part and denied in part.
Defendant contends that this Court's memorandum and order dated May 31, 1983 should be amended with respect to the rate of interest imposed on the judgment. Specifically, defendant argues that the interest (including double interest) provisions of 29 U.S.C. § 1132(g)(2)(B) and (C) apply only on a prejudgment basis and that postjudgment interest is governed by the Federal Courts Improvements Act of 1982, 28 U.S.C. § 1961(a). This Court disagrees.
Congress has mandated that employers make timely withdrawal liability payments upon demand by the plan trustees notwithstanding a challenge to the trustees' assertion of liability. See, e.g., 29 U.S.C. §§ 1399(c)(2) and 1401(d). Consistent with that statutory purpose, Congress provided plan trustees with certain remedies in the event they were compelled to go to court to enforce their plan's right to unpaid contributions. 29 U.S.C. § 1132(g)(2). That section mandates that courts shall award the plan double interest (or liquidated damages) on the unpaid contributions and attorneys' fees. 29 U.S.C. § 1132(g)(2)(C) and (D). That section also provides that courts shall award plans interest in accordance with the rate prescribed under 26 U.S.C. § 6621.
The statutory language does not distinguish between pre- and post-judgment interest awards. Absent specific statutory language, this Court is unpersuaded that Congress intended the remedial provisions of the MPPAA to apply to pre-judgment damages only. To the contrary, the expressed policy underlying the statute indicates that to encourage prompt payment of unpaid contributions, Congress intended to impose interest at the prescribed rates until such time as payment is tendered. Because of this strong statutory policy and the comprehensiveness of the statutory scheme, this Court is of the opinion that the specific interest provisions of the MPPAA take precedence over the general interest provisions of 28 U.S.C. § 1961(a). Accordingly, this Court believes that the rate of interest prescribed under 26 U.S.C. § 6621 should be applied to defendant's liability until such time as payment is tendered.
The rates established under 26 U.S.C. § 6621 are prescribed by the Secretary of the Treasury of the United States and fluctuate in accordance with the adjusted prime rate charged by banks. By Order dated May 31, 1983, this Court assessed interest on defendant's delinquent contributions in accordance with the fluctuating rates imposed under 26 U.S.C. § 6621. The interest rate prescribed by the Secretary of the Treasury effective January 1, 1983 to the present date is 16%. The Court therefore assessed interest on defendant's contributions from January 1, 1983 until the date of payment at the rate of 16%. However, because the interest rates under 26 U.S.C. § 6621 may change again prior to the date of defendant's payment, the Order will be amended to reflect that possibility. The Court declines to modify any other part of its memorandum and order dated May 31, 1983.
NOTES
[1] Although the Supreme Court affirmed the decision on different grounds, the Court apparently gave its sub silentio approval to the Seventh Circuit's due process analysis.
[2] Defendant also contended in its Answer to plaintiffs' complaint that the alleged withdrawal liability was too high because plaintiff trustees failed to follow prudent investment policies and practices and because the plaintiffs utilized improper actuarial assumptions in establishing the unfunded vested liability of the Plan. These affirmative defenses were dismissed by Order of Court dated November 23, 1982. The MPPAA mandates that such disputes be resolved through arbitration, not through the courts. 29 U.S.C. § 1401(a)(1). Because defendant declined to follow the dispute resolution mechanisms set forth in the MPPAA and its time for doing so has expired, defendant is foreclosed from raising such arguments.
[1] Defendant contends that the applicable interest rate is that set forth in 29 U.S.C. § 1399(c)(6). This Court disagrees. The MPPAA provides that if an employer fails to make withdrawal liability payments when due, the payments shall be treated as delinquent contributions and enforced in accordance with 29 U.S.C. § 1132(g)(2). 29 U.S.C. § 1132(g)(2) could not be clearer  actions under that paragraph are to be governed by the interest rates prescribed under 26 U.S.C. § 6621.
[2] Cf. Section 12.01 of the Amendments to the plan imposing withdrawal liability on defendant. That section explicitly imposed liability on defendant "effective retroactive to April 29, 1980."
[3] Defendant argues that plaintiffs should not be entitled to fees representing work performed by paralegals. This Court disagrees. See, e.g., Hawkins v. Anheuser-Busch, Inc., 697 F.2d 810, 817 (8th Cir.1983).