**BOARD OF TRUSTEES OF the WESTERN CONFERENCE OF TEAMSTERS PENSION TRUST FUND, Plaintiff,**

v.

**J.N. CEAZAN, a California corporation, Defendant.**

**No. C–82–4092–SAW.**

United States District Court, N.D. California.

March 17, 1983.

---

Pillsbury, Madison & Sutro, Kirke M. Hasson, Robert J. Lange, Jennifer L. Ayres, San Francisco, Cal., for plaintiff.

Marvin Gelfand, Los Angeles, Cal., for defendant.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND GRANTING PLAINTIFF'S RELATED COUNTER–MOTION FOR SUMMARY JUDGMENT

WEIGEL, District Judge.

Plaintiff Board of Trustees of the Western Conference of Teamsters Pension Trust Fund (the "Fund") brings this action pursu-

ant to the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), Pub.L. No. 96–364, amending the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* The Fund is the "plan sponsor" of the Western Conference of Teamsters Pension Plan (the "Plan"). The Plan is maintained under a number of collective bargaining agreements binding employees of many unaffiliated employers, pursuant to 29 U.S.C. § 1b01(a)(3). The Plan is a "defined benefit" plan. Under such an arrangement, employees' pensions are calculated on the basis of factors such as years of service, not on the basis of contributions to the plan made on the employees' behalf. As a result, the Plan has "unfunded vested benefit liabilities" that are the difference between the actuarial valuation of Plan assets and the actuarial valuation of benefits to which the covered employees are already entitled. In the instant case, the Fund seeks to collect amounts allegedly fixed and due for unfunded vested benefits from defendant "J.N. Ceazan" ("Ceazan").*

To understand the context in which this matter arises, some description of MPPAA provisions is useful. The MPPAA obliges an employer withdrawing from a multiemployer plan to continue paying a fair share of unfunded vested benefit liabilities existing at the time of its withdrawal. 29 U.S.C. § 1381. The MPPAA gives plan sponsors the duty to demand payment of and collect withdrawal liability. When an employer withdraws, the plan sponsor is required to notify the employer of the amount of its withdrawal liability and the schedule for payment of that liability. 29 U.S.C. § 1399(b). Calculation of the withdrawn employer's liability is performed according to detailed guidelines. 29 U.S.C. § 1391.

If the employer disputes the liability, the employer must inform the plan sponsor of the employer's contentions within 90 days. The plan sponsor then must review the employer's contentions and issue a decision. 29 U.S.C. § 1399. If the employer wishes to challenge the assessed liability, the employer must initiate arbitration within certain time limits. 29 U.S.C. § 1401(a)(1). An arbitrator then reviews the sponsor's determination of liability. 29 U.S.C. § 1401. The arbitrator's decision is reviewable in federal district court. 29 U.S.C. § 1401(b)(2). If an employer initiates arbitration, and the arbitrator renders an award for the plan sponsor, the sponsor must bring an action to enforce the withdrawal liability. *Id.* If the employer fails to initiate arbitration, the sponsor must bring an action, such as the instant case, to enforce the withdrawal liability.

The MPPAA was signed into law on September 26, 1980. However, the Act's withdrawal liability provisions were made retroactively effective to April 29, 1980, pursuant to 29 U.S.C. § 1461(e)(2).

In this matter, on February 9, 1982, the Fund sent to Ceazan a statutory notice and demand, advising Ceazan of, *inter alia,* its withdrawal liability, its obligation to request review, and its ability to initiate timely arbitration, if it disputed the Fund's claims as to withdrawal liability. Ceazan never requested review; thus, no arbitration was commenced. *See* 29 U.S.C. § 1401(a)(1). The Fund, then, filed this action to enforce Ceazan's withdrawal liability.

Ceazan has moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), claiming that various provisions of the MPPAA are unconstitutional under the Fifth and Seventh Amendments. The Fund has filed a related counter-motion for summary judgment, alleging that Ceazan's liability is fixed under the pertinent provisions of the MPPAA and the ERISA legislation.

*I. Ceazan's Motion To Dismiss*

*1. Relevant Standards*

■ In support of its motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), Ceazan

---

\* The Fund has sued defendant as "J.N. Ceazan, a California corporation." Defendant alleges that it has been "incorrectly sued" and that its legal name is "J.N. Ceazan Co., a California corporation."

has submitted materials outside the pleadings. Consequently, the Court treats the motion as one for summary judgment pursuant to Fed.R.Civ.P. 56. Fed.R.Civ.P. 12(b). To gain summary judgment, Ceazan need show there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

### 2. Constitutionality of the MPPAA

#### A. Fifth Amendment Claims

##### i. MPPAA Retroactive Application and the Due Process Clause

Ceazan contends that retroactive application of the MPPAA's withdrawal liability provisions to employers, such as itself, who withdrew from a multiemployer plan between the MPPAA's effective date (April 29, 1980) and enactment date (September 26, 1980), violates the Fifth Amendment due process clause.

■ One challenging a Congressional statute on due process grounds must establish that there is no rational basis for the statute. *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976). To determine whether or not retroactive application of the MPPAA satisfies this due process standard, the Court must consider, first, the reliance interests of the parties affected; second, whether the impairment of the private interest is effected in an area previously subject to regulatory control; third, the equities of imposing the disputed legislative burdens; and fourth, the inclusion of statutory provisions designed to moderate the impact of the burdens. *Nachman Corp. v. Pension Benefit Guaranty Corp.,* 592 F.2d 947, 960 (7th Cir.1979), aff'd, 446 U.S. 359, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980) ("*Nachman*"). These factors "must only be used to determine whether the legislation represents a rational means to a legitimate end." 592 F.2d at 960.

#### a. Reliance Interests

■ Congress intended the MPPAA to preclude easy withdrawal of employers from multiemployer pension plans and protect unfunded benefits that employees had earned. *See Pacific Iron & Metal Co. v. Western Conference of Teamsters Pension Trust Fund,* 553 F.Supp. 523 (W.D.Wash. 1982) ("*Pacific Iron*"). Congress was aware that employer withdrawal unfairly burdens remaining employers, places upward pressure on plan contribution rates, disinclines new employers to join plans, and increases the possibility of additional employer withdrawals and plan insolvency. *See Peick v. Pension Benefit Guaranty Corp.,* 539 F.Supp. 1025, 1046 (N.D.Ill.1982) ("*Peick*"). Congress also was cognizant that a pre-enactment effective date for withdrawal liability provisions might help prevent knowledgeable and opportunistic employers from abandoning their plans while Congress was still debating. *See* 126 Cong. Rec. S10156 (July 29, 1980) (remarks of Sen. Matsunaga). *See also Peick,* 539 F.Supp. at 1052–1056. Therefore, enactment of retroactive withdrawal liability provisions was consistent with Congress' decision that the reliance interests of employees and multiemployer plans generally were most important. *See Coronet Dodge, Inc. v. Speckmann,* 3 EBC 2169 (E.D.Mo.1982).

■ Nevertheless, Ceazan contends that the reliance interests tip in its favor. It notes that, on July 10, 1980, roughly three weeks before withdrawing from the Plan, it and MDL, Inc. ("MDL") entered into an agreement whereby it agreed to contract its labor from MDL. Shortly thereafter, all but one of Ceazan's employees voluntarily terminated their associations with Ceazan and signed employment contracts with MDL. On November 12, 1980, these employees voted to do without a pension plan for future work and receive higher immediate wages in return. Ceazan claims that as a consequence of this vote the employees had no reliance interests that could be damaged by its withdrawal from the Plan. However, Ceazan conveniently ignores that the employees did not agree to abandon any pension benefits already earned. These benefits are what the MPPAA withdrawal liability provisions are designed to protect.

Similarly, that Ceazan arranged for MDL's employment of Ceazan's former employees and to have MDL make future pension plan contributions for those employees does not mean that Ceazan transferred to MDL the obligation of paying Ceazan's share of existing unfunded vested benefit liabilities. Ceazan presents no authority to demonstrate that it can contract away its preexisting statutory obligations. Nor can Ceazan's asserted need to minimize costs and maximize profits through its dealings with MDL affect the balance. The Court here follows Congress' clear intent to subordinate the interests of employers, such as Ceazan, to those of employees in receiving benefits already earned. *See Peick,* 539 F.Supp. at 1046.

### b. Degree of Prior Legislation In the Field

The second prong of the *Nachman* analysis is whether or not legislative regulation prior to the MPPAA was so limited that a reasonable person could not have expected the specific type of legislative action that occurred. Prior legislative regulation was not so limited.

Multiemployer plans have been subject to federal control since 1947. Moreover, the 1974 ERISA legislation comprehensively regulated many aspects of multiemployer trusts. These developments in themselves "afforded clear warning that the federal government might one day act again and further buttress the legislative scheme it created." *Peick,* 539 F.Supp. at 1044–1045. Furthermore, Congress consulted with the affected parties for three years before enacting the MPPAA. *Id.* at 1052. And, the MPPAA from its introduction in Congress and throughout its legislative history contained a provision for a pre-enactment effective date. *Id.* at 1053. Employers, such as Ceazan, surely had advance notice that multiemployer plans would be closely regulated and that retroactive withdrawal liability would be part of that regulation.

### c. Equities of Imposing the Burden

The third *Nachman* factor relates to the equities of imposing retroactive withdrawal liability upon Ceazan. Upon review of all pertinent considerations, the Court has concluded that it is equitable to impose that burden. The challenged provisions of the MPPAA are expressions of Congress' legitimate concern for vested employee benefits, plan solvency generally, and the liability of employers remaining in plans after other employers withdraw.

### d. Statutory Provisions Tempering the Impact of the New Law

The fourth *Nachman* consideration is whether the statute under review contains moderating provisions which mitigate its impact and effects. There are numerous such provisions in the MPPAA, some of which are:

1. Withdrawal liability is payable in installments, calculated on the basis of the employer's past contribution history. 29 U.S.C. § 1399(c)(1)(C) (applicable to Ceazan).

2. Calculations of employers' withdrawal liability is carried out under complex formulas designed to approximate the employers' fair shares. 29 U.S.C. § 1391 (applicable to Ceazan).

3. Certain assets of employers are exempt from enforcement of the liability. 29 U.S.C. § 1405(c) (applicable to Ceazan).

4. If an employer needs more than twenty years to amortize its withdrawal liability, that liability does not extend beyond the first twenty annual payments. 29 U.S.C. § 1399(c)(1)(B).

5. There is a *"de minimis"* exemption that eliminates or reduces withdrawal liabilities under $150,000. 29 U.S.C. § 1389(a).

6. If an employer withdraws only partially, its liability is prorated. 29 U.S.C. § 1385.

These provisions demonstrate that Congress attempted to moderate whatever harshness the MPPAA visited upon withdrawing employers. *See Peick,* 539 F.Supp. at 1049–1052. Moreover, Ceazan ignores the significance of the moderating provisions available to it.

■ Ceazan contends that many of the mitigating features are unavailable to it and, thus, that the balance tips in its favor on this crucial *Nachman* factor. This contention is misguided, since the central issue is whether there are tempering provisions that apply to employers generally. *See Nachman,* 592 F.2d 947; *Peick,* 539 F.Supp. 1025. Ceazan offers no authority to the contrary.

■ Consequently, having examined the four *Nachman* factors, the Court concludes that the retroactive withdrawal liability provisions have a rational basis and pass constitutional muster under the Fifth Amendment due process clause. *Accord, Textile Workers Pension Trust Fund v. Standard Dye & Finishing Co.,* 549 F.Supp. 404 (S.D.N.Y.1982); *Pacific Iron,* 553 F.Supp. 523; *Coronet Dodge, Inc. v. Fred R. Speckmann, et al.,* 3 EBC 2169; *R.A. Gray & Co. v. Oregon-Washington Carpenters-Employers Pension Trust Fund,* 549 F.Supp. 531 (D.Ore.1982). *But see Shelter Framing Corp. v. Carpenters Pension Trust for Southern California,* 543 F.Supp. 1234 (C.D. Cal.1982).

### ii. MPPAA Retroactivity and the Taking Without Just Compensation Clause

Ceazan argues that the MPPAA's imposition of retroactive withdrawal liability violates the Fifth Amendment prohibition against taking private property "for public use, without just compensation."

■ No set formula exists to determine whether a government restriction amounts to a taking under the Fifth Amendment. *Loretto v. Teleprompter Manhattan CATV Corp.,* —— U.S. ——, ——, 102 S.Ct. 3164, 3171, 73 L.Ed.2d 868, 876 (1982). A taking is more readily found "when the interference with property can be characterized as a physical invasion by government ... than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." *Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631

(1978). This aspect of the Fifth Amendment was designed to bar government from compelling some people to bear public burdens which, in all fairness and justice, should be borne by the public as a whole. *Id.* at 123, 98 S.Ct. at 2659. *See also Armstrong v. U.S.,* 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960).

The MPPAA causes no "physical invasion" of property by the government or the Fund. Moreover, retroactive withdrawal liability for unfunded vested benefits is not liability that in fairness ought to be borne by the public as a whole. The withdrawing employer must shoulder this liability. Thus, Ceazan's "just compensation" challenge fails. *Accord, Fur Mfg. Industry Retirement Fund v. Lazar-Wisotzky, Inc.,* 550 F.Supp. 35 (S.D.N.Y.1982); *Victor Construction Co. v. Construction Laborers Pension Trust,* 3 EBC 1763 (C.D.Cal.1982); *Peick,* 539 F.Supp. at 1025.

### iii. MPPAA and Procedural Due Process

■ Ceazan challenges on procedural due process grounds the statutory obligation that employers make installment payments for alleged withdrawal liability in disputes employers refer to arbitration, pending a final decision by the arbitrator. 29 U.S.C. § 1401(d). The challenge is groundless. Even ignoring the fact that Ceazan did not refer this dispute to arbitration, the authority Ceazan relies on is inapposite. Both *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) and *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) dealt with the constitutionality of statutes permitting pre-judgment seizures of property. Neither § 1401(d) nor any other provision of the MPPAA gives anyone the power to seize any property before judgment. The Fund can only effect seizure of Ceazan's property after this Court has heard and considered all Ceazan's constitutional claims and rendered judgment in the Fund's favor. Section 1401(d), therefore, is immune from procedural due process attack. *Accord, Fur Mfg. Industry Retirement Fund v. Lazar-Wisotzky,* 550

F.Supp. 35; *Shelter Framing Corp. v. Carpenters Pension Trust For Southern California,* 543 F.Supp. 1234.

### B. Seventh Amendment Claims

 Ceazan contends that MPPAA provisions unconstitutionally deny it the right to trial by jury. Under the MPPAA, all disputes regarding an employer's withdrawal liability, as calculated by a plan sponsor, are subject to arbitration. 29 U.S.C. § 1401. During the arbitration proceedings, determinations by the plan sponsor are presumed correct. 29 U.S.C. § 1401(a)(3)(A), (B). Pending the arbitrator's decision, the employer is obliged to make all withdrawal liability payments. 29 U.S.C. § 1401(d). After the arbitrator has rendered a decision, either party may appeal to a federal district court. 29 U.S.C. § 1401(b)(2). The arbitrator's determinations in the proceedings below are presumed correct, "rebuttable only by a clear preponderance of the evidence." 29 U.S.C. § 1401(c).

Ceazan argues that the MPPAA's imposition of installment payments during arbitration and presumptions that the plan sponsor's and arbitrator's determinations are correct contravene the Seventh Amendment. A number of courts have rejected similar contentions. *See Peick,* 539 F.Supp. 1025; *Shelter Framing Corp. v. Carpenters Pension Trust For Southern California,* 543 F.Supp. 1234. *See also Fur Mfg. Industry Retirement Fund v. Lazar-Wisotzky, Inc.,* 550 F.Supp. 35; *Victor Construction Co. v. Construction Laborers Pension Trust,* 3 EBC 1763.

It is settled that· "[i]f the issue in the context in which it arises would have been heard at common law in 1791, when the Seventh Amendment was adopted, or, more accurately, in 1938 when law and equity were merged, it is now triable of right to a jury." 9 C. Wright and A. Miller, *Federal Practice and Procedure* § 2302 (1971). *See also Ross v. Bernard,* 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970); *In re U.S. Financial Securities Litigation,* 609 F.2d 411 (9th Cir.1979), *cert. denied,* 446 U.S. 929, 100

S.Ct. 1866, 64 L.Ed.2d 281 (1980). Ceazan mistakenly claims that since the Fund seeks enforcement of a money judgment, an indisputably legal remedy, it is entitled to trial by jury. The fact that money is involved does not necessarily imply the existence of a common law action and the right to trial by jury. *Shelter Framing Corp. v. Carpenters Pension Trust for Southern California,* 543 F.Supp. at 1246.

It is further settled that Congress may delegate fact-finding functions to administrative-type bodies in cases involving "public rights." *See, e.g., Atlas Roofing Co. v. OSHA,* 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977). Ceazan asserts that this is not a case involving "public rights." This assertion flies in the face of Ceazan's prior claim, made in connection with its Fifth Amendment "just compensation" challenge, that the Fund's unfunded vested withdrawal liability should, in fairness and justice, be borne by the entire public. The assertion also conflicts with solid authority to the contrary. *Peick,* 539 F.Supp. at 1062. Moreover, the assertion does not take into account that the MPPAA does not absolutely prevent trial by jury as a means of reviewing an arbitrator's decision. An employer who initiates arbitration, along with the opposing party, "may bring an action" in federal district court "to enforce, vacate, or modify the arbitrator's award." 29 U.S.C. § 1401(b)(2).

Finally, the fact that the MPPAA sets up certain presumptions as to the determinations of plan sponsors and arbitrators and/or shifts certain burdens of proof does not violate the Seventh Amendment. "[W]hen Congress creates a statutory right, it clearly has the discretion in defining that right, to create presumptions, or assign burdens of proof, or prescribe remedies; it may also provide that persons seeking to vindicate that right must do so before particularized tribunals created to perform the specialized adjudicative tasks related to that right." *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, ——, 102 S.Ct. 2858, 2878, 73 L.Ed.2d 598 (1982).

For the foregoing reasons, Ceazan's Seventh Amendment challenge to the MPPAA is meritless.

Consequently, since all of Ceazan's constitutional claims are fatally flawed, its motion to dismiss this action is denied.

## II. Fund's Related Counter-Motion For Summary Judgment

The Fund has moved for summary judgment, seeking to enforce withdrawal liability allegedly already fixed under relevant provisions of the MPPAA and ERISA. The MPPAA states that any dispute over the existence or amount of an employer's withdrawal liability is to be resolved through arbitration. 29 U.S.C. § 1401(a)(1). If the employer, as here, does not initiate arbitration, "the amounts demanded by the plan sponsor . . . shall be due and owing on the schedule set forth by the plan sponsor." 29 U.S.C. § 1401(b)(1). Then, the plan sponsor is entitled to bring a collection action in a state or federal court of competent jurisdiction. *Id.*

On February 9, 1982, the Fund sent to Ceazan a statutory notice and demand advising Ceazan of, *inter alia,* its withdrawal liability, its obligation to request review, and its right to initiate timely arbitration, if it disputed the Fund's claim of withdrawal liability. Ceazan never requested review within the time permitted. There can be no arbitration without the requisite review by the Fund. 29 U.S.C. § 1401(a)(1). As a result, the amounts demanded by the Fund have become fixed as due and owing. 29 U.S.C. § 1401(b)(1).

Ceazan claims there are genuine factual and legal issues unresolved which preclude the entry of summary judgment against it. First, Ceazan contends that the MPPAA arbitration provisions cannot operate against it before this Court disposes of the constitutional issues at bar. This, Ceazan asserts, means that its constitutional claims prevent its alleged liability from being established and outstanding under the MPPAA. The claim is groundless, and the authority cited inapposite.

Ceazan also claims the protection of an exemption from the MPPAA's withdrawal liability provisions. 29 U.S.C. § 1383(d). To receive the benefit of this exemption, an employer must timely post a bond in an amount equal to half of its withdrawal liability. Ceazan has not done so. The exemption cannot apply.

Ceazan further argues that it cannot be liable for withdrawal liability, because, before withdrawing on August 1, 1980, it arranged for its employees to work for MDL, which became responsible to contribute for benefits based on future work. Ceazan points to no authority for its position. And, Ceazan does not address the fact that MDL did not inherit Ceazan's withdrawal liability, as based upon unfunded vested benefits earned before August 1, 1980.

Finally, Ceazan contends that there are questions as to the constitutionality of certain provisions of the MPPAA. As shown previously, the challenged provisions pass constitutional muster.

Consequently, there is no genuine issue of material fact, and the Fund is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The Court grants the Fund's related counter-motion for summary judgment.

The amount due the Fund is to be computed by adding the following:

1. The principal amount due and owing. 29 U.S.C. § 1399(c)(5).

2. Interest thereon from the due date of the first payment missed. *Id.* Where, as in this case, a collection action is required, interest must be awarded at the rate provided in the Plan for delinquencies. 29 U.S.C. § 1132(g).

3. An additional amount equal to the greater of: the interest due, or twenty per cent of the principal amount due. 29 U.S.C. § 1132(g)(2)(C).

4. Costs of suit and reasonable attorneys' fees. 29 U.S.C. § 1132(g)(2)(D).

In the instant case, the specific amounts Ceazan owes are: **

---

** Ceazan summarily notes that "the alleged

amount of withdrawal liability is incorrect due

1. $151,258.79 principal.
2. $24,526.18 interest.
3. $30,251.76 (interest or 20% principal).
4. $99.75 costs.
5. $2,450 attorneys' fees.

Accordingly,

IT IS HEREBY ORDERED that defendant's motion to dismiss this action is denied.

IT IS FURTHER HEREBY ORDERED that plaintiff's related counter-motion for summary judgment is granted.

IT IS FURTHER HEREBY ORDERED that judgment be entered against defendant in favor of plaintiff in the total amount of $208,586.48.

to mathematical and actuarial errors." Defendant's Opposition to Plaintiff's Related Counter-Motion For Summary Judgment And Reply To Plaintiff's Opposition To Defendant's Motion To Dismiss at 10. More than this mere allegation and speculative possibility is needed to defeat the Fund's motion for summary judgment. *See Contemporary Mission, Inc. v. U.S. Postal Service,* 648 F.2d 97, 107 (2d Cir.1981); 10 C. Wright and A. Miller, *Federal Practice and Procedure* § 2739 (1983).