Harrison COMBS, et al., Plaintiffs,

v.

ADKINS & ADKINS COAL CO., INC., et al., Defendants.

Civ. A. No. 84–781.

United States District Court, District of Columbia.

Oct. 19, 1984.

**124**

Rodney F. Page, R. Steven Holt, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., for plaintiffs.

Dennis Dean Kirk, Washington, D.C., for defendants.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge:

This matter comes before the Court on the motion to dismiss, or in the alternative, to transfer, filed by the defendants, and the plaintiffs' motion for summary judgment asserting the defendants' liability to the plaintiffs for contributions due under the Employee Retirement Income Security Act of 1974 ("ERISA").

The plaintiffs, trustees of the United Mine Workers of America's ("UMWA") 1950 and 1974 Pension Plans ("Plans" or "Fund") have brought suit under ERISA, as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001 *et seq.* As sponsors of the Plans, the plaintiffs seek a declaratory judgment that the defendants have ceased to make contributions to the Plans, 29 U.S.C. § 1383(a), and request payment of contributions equaling approximately $50,-000, together with the liquidated damages

and interest which are authorized by statute.

Defendants Phillip and Earl Adkins operate a coal mining business in Kentucky. When the Adkins' business operated as the Adkins & Adkins Coal Company, Inc. ("Adkins & Adkins"), the company was a signatory to the National Coal Mine Construction Agreements of 1978 and 1981, which required it to contribute to the Plans. Subsequently, the business operated by the Adkins brothers has also been known as the A & A Coal Company and the P & E Coal Company, Inc. For purposes of this Memorandum Opinion, the above entities are collectively referred to as the defendants.

The two pending motions present three issues for the Court's consideration: first, whether venue lies in the District of Columbia; second, whether this Court has personal jurisdiction over the defendants; and third, whether the defendants have withdrawn from a multiemployer pension plan within the meaning of 29 U.S.C. § 1398. For the reasons set forth below, the Court denies the defendants' motion to dismiss or transfer, and grants summary judgment in favor of the plaintiffs.

### A.

### Venue and Personal Jurisdiction

The Trustees are authorized to bring this action pursuant to 29 U.S.C. §§ 1132(a)(3) and 1451(a)(1). In actions "to compel an employer to pay withdrawal liability" or "to collect withdrawal liability," 29 U.S.C. § 1451(b), (c), venue and service of process are governed by 29 U.S.C. § 1451(d). That section provides that:

[a]n action ... may be brought in the district where the plan is administered or where the defendant resides or does business, and process may be served in any district where a defendant resides, does business, or may be found.

█ Similar venue and service of process provisions are provided in 29 U.S.C. § 1132(e)(2), which permits actions by plan fiduciaries to enforce ERISA liability. *See*

*Combs v. Pelbro Fuel, Inc.,* 4 E.B.C. 2610, 2611 (D.D.C.1983). Since the 1950 and 1974 pension plans are administered in the District of Columbia, venue lies in this District within the plain meaning of sections 1451(d) and 1132(e)(2).

■ Moreover, this Court possesses personal jurisdiction over the defendants, who reside in Kentucky. Where Congress has authorized nationwide service of process, a federal court may exercise personal jurisdiction over any United States resident, without regard to whether its sister state court could assert jurisdiction under minimum contacts principles. *Briggs v. Goodwin,* 569 F.2d 1, 8–10 (D.C.Cir.1977) (interpreting similar provisions of 28 U.S.C. § 1391(e)), *rev'd on other grounds sub nom. Stafford v. Briggs,* 444 U.S. 527, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980); *Combs v. Pelbro Fuel, Inc.,* 4 E.B.C. at 2611 (District Court for the District of Columbia asserted jurisdiction over defendant Pennsylvania corporation in ERISA case). Here, the defendants' status as United States residents is not disputed, and this Court may assert personal jurisdiction over them.

This finding also disposes of the defendants' contentions with respect to service of process. The validity of service in this case depends on the defendants' "contacts with the district of service," *I.A.M. National Pension Fund, Benefit Plan A v. Wakefield Industries, Inc.,* 699 F.2d 1254, 1258 (D.C.Cir.1983), and not, as the defendants contend, on their contacts with the District of Columbia. The Congress may constitutionally authorize extraterritorial service of process, *see Briggs v. Goodwin,* 569 F.2d at 8, as done here. The defendants do not dispute that they have sufficient contacts with Kentucky, the district of service. Accordingly, the defendants' motion to dismiss must be denied.

1. The defendants repeatedly confuse 28 U.S.C. § 1404(a) (transfer in the interest of justice) with 28 U.S.C. § 1406(a) (transfer for improper venue). Since venue lies in the District of Columbia, transfer is not authorized by section 1406(a).

■ This Court also declines to disturb the plaintiffs' choice of forum by transferring this action to Kentucky under the doctrine of *forum non conveniens* or pursuant to its discretion under 28 U.S.C. § 1404(a).[1] Numerous decisions of this Court have denied similar motions filed by nonresident defendants in other ERISA cases. *See, e.g., Combs v. Pelbro Fuel,* 4 E.B.C. 2612–13; *Combs v. Rawhide Coal Co.,* No. 83–2045 (D.D.C. Nov. 16, 1983); *Combs v. Garin Trucking Co.,* No. 83–3651 (D.D.C. May 21, 1984), *appeal docketed,* No. 84–5343 (D.C.Cir. May 31, 1984). The defendants were given ample notice that litigation could ensue in the District of Columbia, and in any event, it makes good sense to hear this case where the Plans are administered.

The defendants also argue that litigation currently pending in the Eastern District of Kentucky supports transfer to that district. This argument must be rejected because the Kentucky litigation concerns the defendants' dispute with the union, not the pension fund. *See District 30, United Mineworkers of America v. Adkins & Adkins Coal Co., Inc.* ("Kentucky litigation"), No. 82–310 (E.D. Kentucky, amended complaint filed Feb. 25, 1983). The amended complaint is attached as Exhibit 6 to the Memorandum in Opposition to Defendants' Motion to Dismiss, or, in the Alternative, to Transfer, and in Support of Plaintiffs' Motion for Summary Judgment ("Plaintiffs' Memorandum"), filed Aug. 21, 1984.

**B.**

**Subject Matter Jurisdiction: Exemption From Withdrawal Liability Under 29 U.S.C. § 1398**

The defendants oppose the plaintiffs' motion for summary judgment on the grounds that they are engaged in a labor dispute with their employees within the meaning of 29 U.S.C. § 1398,[2] and are therefore ex-

2. Section 1398 provides in relevant part that: [an] employer shall not be considered to have withdrawn from a plan solely because—

    \*    \*    \*    \*    \*    \*

empt from any obligation to make contributions to the Plans. The dispute between the defendants and their employees in this case is summarized in the Amended Complaint in the Kentucky litigation, which alleges that Adkins & Adkins Coal failed to withhold membership dues and union fees and remit those sums to the UMWA in accordance with a 1981 Wage Agreement. Plaintiffs' Memorandum, Ex. 6, ¶¶ 9, 12. In addition, the defendants allege certain work stoppages and union confrontations since February of 1982.

■ Although the defendants and their employees are apparently involved in a labor dispute, this finding does not automatically insulate the defendants from all liability in connection with payment of contributions. The purpose of the labor dispute exception is to protect an employer from the threat of withdrawal liability for time period during which its contributions have been *temporarily* interrupted by labor problems. *I.A.M. National Pension Fund, Benefit Plan C v. Schulze Tool and Die Co., Inc.*, 564 F.Supp. 1285, 1295 (N.D. Cal.1983). This exception, however, does not give an employer the unrestricted ability to permanently cease contributions to a pension plan merely because the "cessation ... was precipitated by a labor dispute." 126 Cong.Rec. 23,038.

■ The facts and circumstances in this case strongly suggest that the defendants have *permanently* withdrawn from the Plans. They have admitted that the entity known as Adkins & Adkins Coal Company, Inc. ceased operations in February of 1982, and was reconstituted as the P & E Coal Company, Inc., a non-union shop. Affidavit of Phillip Adkins at ¶ 9, attached as Ex. 1 to Defendants' Reply to Plaintiffs' Memorandum in Opposition and Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment and Statement of Facts, filed Aug. 31, 1984. Despite the issuance of withdrawal liability notices by the Fund, the defendants have not made any contributions since February of 1982. Affidavit of Deborah L. Gilleland, Assistant Comptroller of the Withdrawal Liability Section of the UMWA Health and Retirement Funds, at ¶ 4, filed Aug. 21, 1984. Based on this information, the trustees of the Fund reasonably determined that the defendants' failure to make payments constituted a permanent withdrawal from the Plans.

■ More importantly, the defendants have forfeited their opportunity to contest the existence or the amount of their withdrawal liability because they blatantly ignored the clear statutory requirements for resolution of disputed withdrawal liability determinations. Within 90 days of receipt of notice and demand for payment, an employer is required to request the plan sponsor to review any dispute concerning the withdrawal liability determination. 29 U.S.C. § 1399(b)(2)(A). If the employer disagrees with the sponsor's decision, it may initiate arbitration. This arbitration must be initiated within 60 days of the date the sponsor notified the employer of the decision on review or within 120 days of the date the employer requested review, whichever is earlier. 29 U.S.C. § 1401(a)(1)(A).[3] If arbitration is not initiated within the statutory time frame, "the amounts demanded by the plan sponsor ... shall be due and owing." 29 U.S.C. § 1401(b)(1).

In June of 1983, the trustees notified Adkins & Adkins that it owed $36,171.82 and $11,102.12 in unpaid contributions to the 1950 and 1974 Plans, respectively, and

---

(2) [it] suspends contributions under the plan during a labor dispute involving its employees.

Although the statute does not provide a definition of the term "labor dispute," the legislative history of section 1398 indicates that a "strike or lockout" falls within this exception. *See* 126 Cong.Rec. 23,038 (1980) (remarks of Rep. Thompson).

3. Although an employer may pursue arbitration and, in turn, seek judicial review of the arbitrator's decision, the employer must make payments under the schedule determined by the Trustees "beginning no later than 60 days after the date of the demand notwithstanding any request for review or appeal of determinations of the amount of such liability...." 29 U.S.C. § 1399(c)(2).

established a payment schedule. The trustees also notified Adkins & Adkins that its failure to abide by the statutory timetable for review would preclude any dispute over the amount owed. Later, in October of 1983, the trustees again demanded payment of the unpaid contributions, in addition to interest. On July 23, 1984, the trustees revised their calculation of the defendants' liability to the 1974 Plan based on a recalculation of unfunded vested benefits. Gilleland Aff. at ¶ 9. This revision increased the defendants' obligation to the 1974 Plan from $11,102.12 to $14,127.89.[4] Despite notification of their obligation to pay $50,299.71 in unpaid contributions, Adkins & Adkins did not request review of this determination or seek arbitration.

The requirement of arbitration broadly covers disputes involving "the establishment or amount of withdrawal liability." *Shelter Framing Corp. v. Pension Benefit Guaranty Corp,* 705 F.2d 1502, 1509 (9th Cir.1983), *reversed on other grounds sub nom. Pension Benefit Guaranty Corp. v. R.A. Gray & Company,* — U.S. —, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984). The Act delegates "factfinding functions to administrative-type bodies," *Washington Star Co. v. International Typographical Union Negotiated Pension Plan,* 729 F.2d 1502, 1511 (D.C.Cir.1984), and an arbitrator's responsibilities include the interpretation of the statutory language of the Act. *Republic Industries, Inc. v. Teamsters Joint Council No. 83 of Virginia Pension Fund,* 718 F.2d 628, 634 (4th Cir.1983) (meaning of "facility" under section 1397(a) is arbitrable issue), *cert. denied,* — U.S. —, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984).

Thus, an arbitrator could have determined whether a "labor dispute" existed within the meaning of section 1398, and whether the trustees had correctly computed the amount of withdrawal liability owed.

Moreover, the defendants have taken no action which would toll the statutory time frames. *See Republic Industries, Inc.,* 718 F.2d at 644 (filing of suit challenging constitutionality of Act tolls limitations period). Under these circumstances, they have conceded the existence and amount of withdrawal liability owed to the Fund. *Board of Trustees of Western Conference of Teamsters Pension Trust Fund v. J.N. Ceazan,* 559 F.Supp. 1210, 1218 (N.D.Cal. 1983) (citing 29 U.S.C. § 1401(b)(1); *Speckmann v. Paddock Chrysler Plymouth, Inc.,* 565 F.Supp. 469, 473 n. 2 (E.D.Mo. 1983).

### C.

### Amount of Defendants' Withdrawal Liability

While the foregoing discussion establishes that the defendants are legally liable to the Plans for withdrawal liability under ERISA, the amount owed must still be determined. Under 29 U.S.C. § 1132(g)(2), the amount of withdrawal liability equals the sum of unpaid contributions, interest on the unpaid contributions, and liquidated damages, as well as reasonable attorneys' fees and costs.

██ The $50,299.71 in unpaid contributions will be taken as established.[5] The Court rejects the defendants' contention that this sum should be decreased by the

---

4. In granting the plaintiffs' motion to amend their complaint to include the higher figure, the Court observed that the defendants had not responded to the motion. Order, filed Sept. 11, 1984. In fact, the defendants' opposition was buried in a pleading containing defendants' reply to the plaintiffs' motion for summary judgment, filed August 31, 1984. The Court now reaffirms its finding that amendment of the complaint is appropriate. *See* discussion *infra* at 128 n. 5.

5. Here, the defendants suggest that this increase may not in fact be warranted, but proffer no

evidence in support of their contention. While the absence of an official demand for $3,000 increase in the amount owed to the 1974 Plan might suggest that this amount should not be taken as established under the statutory framework, this Court adopts the plaintiffs' increased assessment. As the Court noted in *J.N. Ceazan,* 559 F.Supp. at 1218 n. * *, "[m]ore than [ ] mere allegation and speculative possibility is needed to defeat the Fund's motion for summary judgment." The *Ceazan* Court approved the Fund's calculation of the amount of liability owed, and this Court will do likewise.

$50,000 reduction provided by the *de minimis* rule of 29 U.S.C. § 1389(a). This assertion is barred by the defendants' failure to pursue the arbitration scheme outlined in the statute, and furthermore, it is substantively incorrect. The *de minimis* rule is not uniformly applicable to all claims for unpaid withdrawal liability. *Shelter Framing Corp.*, 705 F.2d at 1514. For instance, plans which are covered by section 404(c) of the Internal Revenue Code, 26 U.S.C. § 404(c), are statutorily exempt from the operation of the *de minimis* rule. 29 U.S.C. § 1391(d). This exemption also extends to any continuation of a plan which was subject to section 404(c). *Id.* The 1950 Plan, as a trust established in the coal industry, is covered by section 404(c). H.R. Rep. No. 2543, 83d Cong., 2d Sess., *reprinted in* 1954 U.S.Code Cong. & Ad. News 4017, 5280, 5303 (conference report, Internal Revenue Code of 1954). The 1974 Plan is a continuation of the earlier plan. *Short v. United Mineworkers of America 1950 Pension Trust*, 728 F.2d 528, 531 (D.C.Cir.1984). Thus, the *de minimis* rule does not apply in this instance, and the full amount of withdrawal liability determined by the trustees is due and owing.

With respect to the determination of the amount of interest and liquidated damages owed to the plaintiffs, the detailed affidavit of Ms. Gilleland is in accordance with the applicable law, *see Speckmann v. Paddock Chrysler Plymouth, Inc.*, 565 F.Supp. at 475, and the Court finds that her affidavit correctly sets forth the withdrawal liability owed as of August 21, 1984. In addition, this interest assessment shall be increased at a daily rate of $15.14, until such time as defendants tender payment of the unpaid contributions. *Id.* at 476; Gilleland Aff. at ¶ 11. The Court will entertain requests to amend this finding upon an appropriate showing of interest rate changes.

Moreover, each named defendant is liable to the Fund for the amount of the unpaid withdrawal liability. As the legislative history indicates, "[an] employer contributing to a plan—will not be able to evade withdrawal liability by going out of business and resuming business under a different identity." 126 Cong.Rec. 23,038. Each entity is under the common control of the defendants Phillip and Earl Adkins, *see* Affidavits of Earl Adkins (¶ 3) and Phillip Adkins (¶ 5), attached to Defendants' Motion, filed July 27, 1984, and as such, each is considered a single employer under 29 U.S.C. § 1301(b)(1). Thus, the defendants are jointly and severally liable for the withdrawal of Adkins & Adkins Coal. 29 U.S.C. § 1301(b)(1).