**Harrison COMBS, William Miller, Joseph P. Brennan, and Paul R. Dean, as Trustees of the United Mine Workers of America 1950 Pension Plan and the United Mine Workers of America 1974 Pension Plan, Plaintiffs,**

v.

**WESTERN COAL CORPORATION and Stockton Coal Company, Defendant.**

Civ. A. No. 85-0028.

United States District Court, District of Columbia.

June 25, 1985.

918

Gary M. Ford and Curtis L. Muncy of Groom and Nordberg, Chartered, Washington, D.C., for plaintiffs; William F. Hanrahan, Gerald E. Cole, Jr., and Israel Goldowitz of the United Mine Workers of America Health and Retirement Funds, Washington, D.C., on brief.

David O. Williamson, Gardner, Moss & Rocovich, Roanoke, Va., for defendant.

CHARLES R. RICHEY, District Judge.

## INTRODUCTION

Before the Court are plaintiff's motion for summary judgment and opposition thereto, defendant's motion for summary judgment and opposition thereto, and sup- plemental memoranda. For the reasons stated herein, the Court finds that there are no material facts in dispute, and that plaintiffs are entitled to judgment as a matter of law. The Court also finds that this is a matter which occasions no need for a hearing.

## BACKGROUND

Plaintiffs are the Trustees of the United Mine Workers of America ("UMWA") 1950 Pension Plan (the "1950 Plan") and the UMWA 1974 Pension Plan (the "1974 Plan"). They brought this suit on behalf of the 1950 Plan and the 1974 Plan (hereinafter collectively referred to as "the Plans") against Western Coal Corporation ("Western") and Stockton Coal Company ("Stockton"), a division of Western, to collect withdrawal liability under the Employee Retirement Income Security act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001 *et seq.* As fiduciaries and sponsors of the Plans, *see* 29 U.S.C. §§ 1002(21), 1002(16)(b)(iii), and 1301(a)(10)(A), plaintiffs are authorized to bring this action by sections 502(a)(3) and 4301(a)(1) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1451(a)(1).

The Plans are multiemployer pension plans within the meaning of ERISA § 4001(a)(3), 29 U.S.C. § 1301(a)(3). The Plans were established by the National Bituminous Coal Wage Agreement of 1974, and continued in effect by the 1978 Wage Agreement and the 1981 Wage Agreement.

Defendant Western Coal Corporation ("Western") is a West Virginia corporation. Defendant Stockton Coal Company was a division of Western for certain of its mining operation. (For ease of reference, the Court will refer to Western and Stockton collectively as "Western/Stockton"). Western/Stockton was a member of the Bituminous Coal Operator's Association, Inc., ("BCOA"), a multiemployer bargaining group in the coal industry. As a BCOA member, Western/Stockton was signatory to, and bound by, the provisions of the 1974, 1978 and 1981 Wage Agreements.

Article XX of the Wage Agreements obligated Western/Stockton to contribute to the Plans on behalf of certain of its employees. Pursuant to a contract between Western/Stockton and Island Creek Coal Company ("Island Creek"), Island Creek filed monthly reports with the Plans on behalf of Western/Stockton detailing the number of hours worked and the tons of coal mined by Western/Stockton employees. Island Creek also made monthly payments to the Plans on behalf of Western/Stockton based on the tons and hours reported. The parties have stipulated that Western/Stockton is an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5).

In January, 1982, Western/Stockton sold substantially all of its assets to Energy Coal Income Limited Partnership 1981–I ("ECILP") in exchange for a small amount of cash and promissory notes. On April 1, 1983, ECILP filed a voluntary petition under Chapter Eleven of the Bankruptcy Code in the Eastern District of Kentucky.

The records maintained by the Plans indicate that Western ceased operations in January, 1982, and that Stockton ceased operations in May, 1982. Thus, Western/Stockton ceased to make contributions and to be a participating employer under the Plans during the Plan year ending June 30, 1982. The Trustees of the Plans determined that Western and Stockton had withdrawn from the plans during that year, and, by letters of June 24, 1983, informed Western and Stockton of this determination. *See* 29 U.S.C. § 1381. The Trustees demanded payment from Western of withdrawal liability in the amount of $2,291,876.84 for the 1950 Plan, and $637,896.99 for the 1974 Plan. Mistakenly believing Stockton to be an entity distinct from Western, the Trustees demanded payment from Stockton of withdrawal liability in the amount of $192,-895.30 for the 1950 Plan, and $56,659.32 for the 1974 Plan. The Trustees indicated that these amounts would be payable in monthly installments beginning September 2, 1983.

By letters dated September 22, 1983, counsel for Western/Stockton advised the Trustees that Stockton was merely a trade name used by Western for certain mining operations, and thus not an entity separate and distinct from Western. The letters also requested the Plans to reconsider their withdrawal liability determinations. By letter dated April 17, 1984, the Plans recognized that Stockton was not distinct from Western, but advised Western/Stockton that the Plans' initial withdrawal liability determinations had been correct.

By letters dated March 19, 1984, Western/Stockton requested arbitration of the amount of its withdrawal liability. By letters dated April 18 and April 23, 1984, counsel for the Plans repeated the demand for payments. The letters further advised that Western/Stockton had failed to properly institute arbitration pursuant to the rules adopted by the Plans, which rules generally incorporate rules promulgated by the American Arbitration Association. The letter indicated that the Plans would treat the arbitration request as proper if Western/Stockton would comply with the Plans' arbitration rules within 15 days. Western/Stockton made no further attempt to initiate arbitration.

By letter dated January 4, 1985, the Plans revised the calculations of Western/Stockton's withdrawal liability to the 1974 Plan based upon a recalculation of unfunded vested benefits as of June 30, 1981. The Plans determined that Western/Stockton's revised withdrawal liability amounted to $883,851.19. Western/Stockton has not made any withdrawal liability payments, and plaintiffs filed this action to collect the payments, liquidated damages, accrued interest, attorney's fees, and expenses.

## DEFENDANT CANNOT RELY ON THE DOCTRINE OF LACHES

Defendant contends that plaintiffs' complaint is barred by the doctrine of laches. This contention cannot be supported.

■ To establish the defense of laches, Western/Stockton must show that plaintiffs were guilty of unreasonable delay in notifying defendant of its withdrawal liability, and that the delay prejudiced defend-

ant. *Van Bourg v. Nitze*, 388 F.2d 557, 565 (D.C.Cir.1967). Defendant claims that plaintiffs knew that Western/Stockton had withdrawn from the Plans in early 1982, but did not notify defendant of any withdrawal liability until the letters of June 24, 1983. Defendant claims that this delay was unreasonable, and that it caused prejudice to defendant because in the interim, on April 1, 1983, ECILP, defendant's creditor who had bought substantially all of its assets with promissory notes, had filed a voluntary petition for bankruptcy.

■ This argument is unavailing to defendant. Congress has specifically established a six year statute of limitations for actions, such as this one, to collect withdrawal liability payments. 29 U.S.C. § 1451(f). Because the instant cause of action arose no earlier than 1982, plaintiffs brought this suit well before the expiration of the limitations period. Thus, there is an applicable statute of limitations which has not yet expired, so defendant cannot rely on laches as a defense. *United States v. Repass*, 688 F.2d 154, 158 (2d Cir.1982). *See also United States v. Mack*, 295 U.S. 480, 489, 55 S.Ct. 813, 818, 79 L.Ed. 1559 (1935) ("[l]aches within the term of the statute of limitations is no defense at law").

Even assuming the doctrine of laches applies, there has been no showing the plaintiffs' delay was unreasonable. *Van Bourg*, 388 F.2d at 565. Western/Stockton withdrew from the Plans during the Plan year ending June 30, 1982. The Plans notified Western/Stockton of their determination that defendant had withdrawn on June 24, 1983, less than one year later. The Court cannot find that this delay was unreasonable, and this suit is not barred by the doctrine of laches.

## WESTERN/STOCKTON HAS DEFAULTED ON ITS WITHDRAWAL LIABILITY OBLIGATION AND IS LIABLE TO PLAINTIFFS

A. *Statutory Scheme for Collection of Withdrawal Liability*

The MPPAA provides that an employer who withdraws from a plan is liable to the plan for an amount determined to be its withdrawal liability. 29 U.S.C. § 1381(a). Upon such withdrawal, the plan sponsors have duties to determine the amount of withdrawal liability, to notify the employer of the amount and a payment schedule, and to collect the amount of liability from the employer. *Id.* §§ 1382, 1399(b)(1).

If the employer disagrees with the sponsor's determination of withdrawal liability, the employer must identify any inaccuracies and request the sponsors to review their determination within 90 days. *Id.* § 1399(b)(2)(A). The plan must then review its determination, and notify the employer of the result. *Id.* § 1399(b)(2)(B). Any remaining disputes must be resolved through arbitration. *Id.* § 1401(a)(1). Arbitration must be initiated within the statutory time limits. Either party may initiate arbitration within 60 days of either (1) the date the sponsors notify the employer of their decision on review, or (2) 120 days after the date of the employer's request for review, whichever is earlier. *Id.* § 1401(a)(1).

If the employer fails to timely initiate arbitration, the amounts demanded by the plan shall be due and owing pursuant to the payment schedule established by the plan sponsors. *Id.* § 1401(b)(1). If the payments are not forthcoming, the plan sponsors may bring an action for collection. *Id.* Arbitration proceedings are subject to judicial review, *id.* § 1401(a)(2), and to judicial enforcement. *Id.* § 1401(a)(3).

Even if the employer properly initiates arbitration, it must make payments to the plan during the pendency of review or arbitration. *Id.* § 1399(c)(5). Failure to make such payments on schedule, if not cured within 60 days after receipt of notice of such failure, constitutes a default. 29 U.S.C. § 1399(c)(5)(A). In the event of a default, "a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." *Id.* § 1399(c)(5).

**B.** *Because Defendant Has Failed to Properly Initiate Arbitration, It Cannot Contest the Existence or Amount of Its Withdrawal Liability.*

 ERISA section 4221(a)(1) requires any dispute between an employer as a plan sponsor to be resolved through arbitration. 29 U.S.C. § 1401(a)(1): *Board of Trustees of the Western Conference of Teamsters Pension Trust Fund v. F.C. Parsons, Inc.,* 5 E.B.C. 2277, 2278 (W.D.Wash.1984) (hereinafter cited as *"Parsons"*). If an employer fails to properly initiate arbitration, "the amounts demanded by the plan sponsor ... *shall be due and owing* on the schedule set forth by the plan sponsor." 29 U.S.C. § 1401(b)(1) (emphasis supplied); *Parsons,* 5 E.B.C. at 2278. If an employer fails to properly request arbitration, the employer may not contest in court the fact or amount of its withdrawal liability. *Parsons,* 5 E.B.C. at 2278; *Combs v. Adkins & Adkins Coal Co., Inc.,* 597 F.Supp. 122, 127 (D.D.C.1984); *Board of Trustees of the Western Conference of Teamsters Pension Trust Fund v. Ceazan,* 559 F.Supp. 1210, 1218 (N.D.Cal.1983). Western/Stockton now finds itself in exactly the same predicament as were the employers in the above-cited cases: having failed to properly initiate arbitration, it may not now challenge the Plan's determination of withdrawal liability.

Western/Stockton asserts that it initiated arbitration by requesting it in its letters of March 19, 1984. Counsel for the Plans responded, however, by notifying Western/Stockton that its request did not comply with the Plan's rules for the initiation of arbitration, and by sending Western/Stockton copies of those rules. Although the Plans gave Western/Stockton another fifteen days to comply with the arbitration rules, Western/Stockton made no further attempt to initiate arbitration. Thus, although defendant *requested* arbitration, it did not properly *initiate* arbitra-

tion, even when given extra time to do so, and when provided with the applicable rules.

This distinction between requesting arbitration and initiating arbitration is crucial, as was noted in *Parsons.* The defendant in *Parsons,* like Western/Stockton, made a demand for arbitration with the plan sponsor. *See* 5 E.B.C. at 2280. But it did not follow the arbitration rules agreed to by the parties, which required defendant to file a demand with the American Arbitration Association, and to pay filing fees. In persuasive reasoning, the *Parsons* Court rejected defendant's argument that it had satisfied the arbitration requirements of the MPPAA. *Id.* Because defendant did not follow the rules or the initiation of arbitration, it simply did not initiate arbitration within the meaning of 29 U.S.C. § 1401. *Id.*

Western/Stockton attempts to distinguish *Parsons* by stating that the Plans unilaterally imposed the arbitration requirements, and that defendant never consented to these rules. This argument is without merit. Western/Stockton agreed to be bound by the Plans' arbitration rules, because it was signatory to the 1974, 1978, and 1981 Wage Agreements. Article XX, sections (b) and (c), of the Wage Agreements incorporate the 1950 and 1974 Pension Plans. Each of the Pension Plans states that "[t]he Trustees shall have the authority to promulgate rules regarding default and arbitration procedure." 1950 Plan, Article VI, § B(11); 1974 Plan, Article VIII, § B(11). Thus, defendant consented to rules to be promulgated by the Trustees, and did not comply with those rules. Nor can it be said that Western/Stockton substantially complied, because once notified of the rules, it made no further attempt to arbitrate.

 The Court also finds that these rules are not unreasonable.[1] They incorpo-

---

1. ERISA mandates that arbitration proceedings be conducted in accordance with procedures to be promulgated by the Pension Benefit Guaranty Corporation ("PBGC"). *See* 29 U.S.C. §§ 1401(a)(2), 1301(a)(4). The PBGC has not

yet promulgated any arbitration rules, and it has issued an opinion letter stating that the parties "may use any reasonable procedures...." PBGC Opinion Letter No. 82–032 (October 28, 1982).

rate the rules promulgated by the American Arbitration Association, with certain changes. Defendant objects most strenuously to the Plans' rule that arbitration will take place in Washington, D.C., if the employer is located less than 750 miles away, such as Western/Stockton. Gilleland Dec. Ex. 3, ¶ 6. The American Arbitration Association Rules, by contrast, provide that the parties shall mutually agree on a locale, or, in the absence of agreement, the Association will designate a locale for arbitration. Defendant Ex. B, ¶ 10. The Court cannot say that this imposes an unreasonable burden on defendant, particularly when defendant failed to raise an objection or to take any steps to comply with the Plans' rules after being notified that its written request for arbitration did not comply with the applicable procedures.

It is clear, therefore, that defendant failed to properly initiate arbitration. Therefore, defendant has "conceded the existence and amount of withdrawal liability owed to the Fund." *Combs v. Adkins & Adkins Coal Co.*, 597 F.Supp. at 127. Accordingly, the Court finds that there are no material facts in dispute, and that plaintiffs are entitled to summary judgment.[2] *Id.; Parsons*, 5 E.B.C. at 2278–80; *Ceazan*, 559 F.Supp. at 1218.

### THE APPLICATION OF THE MPPAA TO DEFENDANT DOES NOT VIOLATE DUE PROCESS

■ Before calculating defendant's withdrawal liability, the Court must briefly respond to defendant's constitutional argument. Citing no authority, Western/Stockton contends that the MPPAA's requirements that it accept and pay the Trustees' determination of withdrawal liability, without an opportunity to be heard, deprives it of Due Process of law. This exact claim has been rejected by the Court of Appeals for this Circuit. *Washington Star Co. v. International Typographical Union Negotiated Pension Plan*, 729 F.2d 1502, 1511

(D.C.Cir.1984). *Accord, Republic Industries, Inc. v. Teamsters Joint Council No. 83 of Virginia Pension Fund*, 718 F.2d 628, 639–42 (4th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984). In light of these holdings, the Court need not give further consideration to defendant's contention. Western/Stockton has not been deprived of Due Process.

### PLAINTIFFS ARE ENTITLED TO THE ASSERTED WITHDRAWAL LIABILITY

Western/Stockton has not paid any of its withdrawal liability, and accordingly is in default under section 4219(c)(5) of ERISA, 29 U.S.C. § 1399(c)(5). The entire amount of its withdrawal liability is now due and owing. *Id.; see also id.* § 1401(b)(1).

■ Defendant contends that 29 U.S.C. § 1405 governs the calculation of withdrawal liability for Western/Stockton. This contention is incorrect. The Plans are covered by section 404(c) of the Internal Revenue Code, 26 U.S.C. § 404(c). Gilleland dec. ¶ 3; *Combs v. Adkins & Adkins Coal Co.*, 597 F.Supp. at 128. ERISA provides that 29 U.S.C. § 1405 does not apply to a plan covered under section 404(c) of the Internal Revenue Code. 29 U.S.C. § 1391(d)(2). Accordingly, 29 U.S.C. § 1405 does not apply, and 29 U.S.C. § 1132(g), used by the Plans in their calculations of defendant's liability, governs Western/Stockton's liability.

Under ERISA section 502(g)(2), 29 U.S.C. § 1132(g)(2), the Court must award plaintiffs:

(A) the unpaid contributions,

(B) interest on the unpaid contributions, calculated at the plan rate or the rate specified in 26 U.S.C. § 6621,

(C) an amount equal to the greater of—
(i) interest on the unpaid contributions, or
(ii) liquidated damages provided or under the plan in an amount not in excess

---

**2.** Plaintiffs have demonstrated that they are entitled to summary judgment against Western/Stockton. Western/Stockton's contract

with Island Creek did not, of course, modify these obligations to the Plans. 17 Am.Jur.2d, Contracts § 465.

of 20 percent of the unpaid contributions,

(D) reasonable attorneys' fees and costs of this action, and

(E) any other appropriate legal or equitable relief.

Plaintiffs have submitted a sworn declaration of Deborah L. Gilleland, Associate Comptroller of the UMWA Health and Retirement Funds, in support of their calculation of Western/Stockton's withdrawal liability. The Court will examine the claimed amounts in conjunction with the Gilleland Declaration to determine the amounts payable to plaintiffs.

The Gilleland declaration shows that Western/Stockton owes unpaid contributions of $2,484,772.10 for the 1950 Plan, and $883,851.19 for the 1974 Plan. Gilleland Dec. ¶ 10. As of April 15, 1985, defendant owed interest of $464,943.11 to the 1950 Plan, and $165,383.58 to the 1974 Plan. *Id.* ¶ 11. After that date, interest accrued at a daily rate of $715.61 to the 1950 Plan, and $254.55 to the 1974 Plan. *Id.* Liquidated damages (twenty percent of the withdrawal liability) are $496,954.43 for the 1950 Plan, and $176,770.24 for the 1974 Plan. *Id.* ¶¶ 12, 13. Because these figures are supported by a sworn declaration, and because under Fed.R.Civ.P. 56(e) defendant's evidence is insufficient to rebut these figures, the Court will accept and award these amounts. *See Combs v. Adkins & Adkins Coal Co.*, 597 F.Supp. at 127 (approving the plaintiffs' calculations, holding that the employer's allegations and speculations were insufficient to defeat the plaintiffs' motion for summary judgment). This results in a total award to the 1950 Plan of $3,446,669.64, plus interest at the rate of $715.61 per day since April 15, 1985, and an award to the 1974 Plan of $1,226,005.01, plus interest at the rate of $254.55 per day since April 15, 1985. The Court will entertain an appropriate application to amend the awards of interest upon a showing of interest rate changes. *See Combs v. Adkins & Adkins Coal Co.*, 597 F.Supp. at 128. By Order of even date herewith, the Court awards these amounts to plaintiffs.

### CONCLUSION

The court today grants plaintiffs' motion for summary judgment, rejecting all of defendant's challenges to plaintiffs' procedures and calculations. The Court recognizes that this may seem to be a harsh result for employers in Western/Stockton's position, but Congress has made clear its objective to keep pension fund payments current. *See Trustees of the Retirement Fund v. Lazar-Wisotzky, Inc.*, 550 F.Supp. 35, 38 (S.D.N.Y.1982), *aff'd mem.*, 738 F.2d 419 (2d Cir.1984). The Court has today issued an order consistent with this Opinion.