John THOMAS, Joseph Molepske, Robert Gibson, Terrence Smith, Maxwell Riffkind and Grant Petersen, Trustees of the Dairy Employees'-Milk Dealers Pension Plan, Plaintiffs,

v.

The SOUTHLAND CORPORATION, Defendant.

No. 84 C 5330.

United States District Court, N.D. Illinois, E.D.

March 4, 1985.

Asher, Pavalon, Gittler & Greenfield, Robert B. Greenberg, Chicago, Ill., for plaintiffs.

Rothschild, Barry & Myers, Christopher G. Walsh, Chicago, Ill., for defendant.

## ORDER

NORGLE, District Judge.

This matter is before the court on the Defendant's, the Southland Corporation ("SOUTHLAND"), Rule 12(b)(6) motion to dismiss. The issue presented by Southland's motion is whether the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1381, et seq. ("MPPAA"), entitles the Plaintiffs, Trustees of the Dairy Employee's-Milk Dealer's Pension Plan ("PLAN"), to payments for Southland's

withdrawal liability pending the arbitrator's determination of Southland's withdrawal liability. Southland contends that internal ambiguities and inconsistencies within MPPAA, as well as several constitutional considerations, preclude a construction of the statute which would entitle the Plan to interim payments. Because the court finds the statutory scheme established by MPPAA consistent and without constitutional defect, Southland's motion to dismiss must be denied. A brief outline of the MPPAA precedes a discussion of the issues raised by the motion to dismiss.

The MPPAA provides a comprehensive statutory scheme which regulates employer withdrawals from multiemployer plans. An employer, therefore, is subject to "withdrawal liability" from the date of withdrawal for a plan's "unfunded vested liability." 29 U.S.C. § 1381. Section 1382 directs the plan's trustees to compute the employer's withdrawal liability. After performing the computation and preparing a schedule of payments, the trustees are rquired by § 1399(b)(1) to notify the withdrawing employer of its liability and demand payment in accord with the established schedule. If a withdrawing employer fails to make payments as demanded by the trustees, then § 1399(c)(3) provides that interest shall accrue on the delinquent payments. After a delinquency period of 60 days the trustees may declare the entire amount of an employer's withdrawal liability due. § 1399(c)(5). A delinquent employer is also subject to interest and penalty on the lump sum payment. *Id.* Section 1401(a) and (b) provide arbitration procedures in the event of a dispute between the plan and the employer regarding an employer's liability or the plan's calculations. In this case, Southland has made a timely request for arbitration, but the parties have yet to appear before an arbitrator.

■ During its deliberation of the MPPAA, Congress was preoccupied with shoring up the security of funding for multiemployer plans. House of Representatives Education and Labor Committee Report, H.R.REP. No. 96-869, Part I, 96th Cong., 2d Sess. 54-55, *reprinted in* 1980 U.S.Code Cong. & Ad.News 2918, 2919, 2925, 2928, 2931, 2952 (hereinafter cited as *"House Report"*). The MPPAA was generally regarded as a remedy for problems inherent in ERISA as it was enacted in 1974. *Id.* at 2919, 2925, 2928, 2020. Under ERISA, employers actually received a benefit by withdrawing from existing plans. *Id.* at 2928. The MPPAA was designed to remove that benefit by imposing liability on withdrawing employers for "vested but unpaid benefits." *See Peick v. Pension Benefit Guaranty Corp.*, 724 F.2d 1247, 1254-55 (7th Cir.1983). The MPPAA also contains several presumptions which favor determinations and calculations made by plan sponsors. *E.g.*, § 1401(a)(3)(A) and (c). Finally, the MPPAA provides incentives for employers and plans to resolve disputes through arbitration. *E.g.*, § 1401(a)(1). Thus, in keeping with the statutory scheme of MPPAA, as well as the Congressional intent behind the statute, plans are provided with the security of continuous funding upon employer withdrawal and withdrawing employers are provided with explicit administrative procedure for resolution of any disputed calculations.[1] On its face the

---

1. Representative Thompson pointed out the necessity for providing plan sponsors with an efficient procedure to insure continued funding upon an employer's withdrawal.

   Pending the resolution of the dispute [involving a plan's determination of withdrawal liability], the employer is required to pay withdrawal liability as originally determined by the plan ... Senate Labor and Human Resources Committee and Finance Committee, Joint Explanation of S.1076: Multiemployer Pension Plan Amendments Act of 1980, 126 Cong.Rec. S. 10120 (Daily ed. July 29, 1980).

   Recourse available under current law [ERISA] for collecting delinquent contributions is sufficient and unnecessarily cumbersome and costly. Some simple collection actions brought by plan trustees have been converted into lengthly, costly and complex litigation concerning claims and defenses unrelated to the employer's promise and the plans' entitlement to the contributions. This should not be the case. Federal pension law must permit trustees of plans to recover delinquent contributions efficaciously, and without regard to issues which might arise under labor-manage-

MPPAA appears to greatly favor plan sponsors over employers. However, it must be kept in mind that an employer's liability to a plan is rooted in the employer's contractual obligations. The House Committee Report on the MPPAA specifically noted the close relationship between the MPPAA and an employer's contractual obligations under a collective bargaining agreement.

> Multiemployer plans are creatures of collective bargaining. The committee believes that the integrity of the collective bargaining process must be preserved to the utmost extent consistent with assuring the financial soundness of multiemployer plans to meet benefit commitments. The bill as reported out by the committee represents an effort to strike an appropriate balance among conflicting interest and needs. The legislation is designed to improve the financial condition of multiemployer plans and eliminate existing incentives to plan termination, while maintaining an adequate level of protection for plan participants through financial assistance to insolvent plans.

*House Report, supra,* at 2931.

With this background in mind, we turn to the task of construing §§ 1399 and 1401. Section 1399(c)(2) provides:

> (2) Withdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor under subsection (b)(1) of this section being no later than 60 days after the date of the demand notwithstanding any request for review or appeal of determinations of the

amount of such liability or of the schedule.

Section 1401(d) provides:

> **(d) Payments by employer prior and subsequent to determination by arbitrator; adjustment; failure of employer to make payments**
>
> *Payments shall be made by an employer in accordance with the determinations made under this part until the arbitrator issues a final decision with respect to the determination submitted for arbitration,* with any necessary adjustments in subsequent payments for overpayments or underpayments arising out of the decision of the arbitrator with respect to the determination. If the employer fails to make timely payment in accordance with such final decision, the employer shall be treated as being delinquent in the making of a contribution required under the plan (within the meaning of section 1145 of this title). (emphasis added).

Southland concedes that both sections create a duty on behalf of withdrawing employers to make interim payments to plans pending an arbitrator's decision. *See Defendants Brief in Support of Motion to Dismiss* at 12, 13. Nevertheless, citing *Republic Industries v. Teamster Joint Counsel,* 718 F.2d 628 (4th Cir.1983), Southland contends that § 1401(b)(1) implicity contradicts §§ 1399(c)(2) and 1402(d). Southland argues that this conflict prevents liability for interim withdrawal payments to the Plan. This court disagrees.

In *Republic,* an employer attacked the constitutionality of the MPPAA. One argument raised by the employer was that

ment relations law—other than 29 U.S.C. 186. Sound national pension policy demands that employers who enter into agreements providing for pension contributions not be permitted to repudiate their pension promises. ... These same principles apply to a plan's claim for employer withdrawal liability assessed in accordance with this legislature [sic].

The public policy of this legislation to foster the preservation of the private multiemployer pension plan system necessitates that provision be made discourage delinquencies and simplify delinquency collection.

... Under the provision of the bill, in addition to any other consequences that follow from a default in paying withdrawal liability payments within the time prescribed is to be treated in the same manner as a delinquent contribution to the plan. Thus, the court must award the plan not only the liability that is in default, plus interest but also liquidated damages and attorneys' fees ... (Rep. Frank Thompson, Jr., Cong.Rec. August 26, 1980, H7899).

provisions of the Act requiring payments pending arbitration violated the due process clause. After upholding the MPPAA against the employer's constitutional attack, the *Republic* court specifically declined to decide whether the MPPAA required an employer to make interim payments. *Republic, supra,* at 642. In a footnote, however, the court discussed what it perceived to be an ambiguity in the MPPAA regarding interim payments. *Id.* at 641 & nn 15, 16. Although the court agreed that § 1399(c)(2) and the first sentence of § 1401(d) clearly require employers to make payments pending arbitration, the court thought the second sentence of § 1401(d) and § 1401(b)(1) were to the contrary. *Id.*

██ Southland has seized the ambiguity identified in *Republic* and reads § 1401(a)(1), (b)(1) as treating amounts demanded by a plan under § 1399(b)(1) as " "due and owing ..." *only* "[i]f no arbitration proceeding has been initiated pursuant to subsection (a)." " *Defendant's Brief in Support of Motion to Dismiss* at 12–13. This reading, however, represents a rather myopic view of § 1401(b)(1).

The full text of § 1401(b)(1) provides:

**(b) Alternative collection proceedings; civil action subsequent to arbitration award; conduct of arbitration proceedings**

(1) If no arbitration proceeding has been initiated pursuant to subsection (a) of this section, the amounts demanded by the plan sponsor under section 1399(b)(1) of this title shall be due and owing on the schedule set forth by the plan sponsor. The plan sponsor may bring an action in a State or Federal court of competent jurisdiction for collection.

The subsection, therefore, plainly requires that "amounts demanded by the plan sponsor under section 1399(b)(1)" become "due and owing" under section 1401(b)(1) *in the absence of a request for arbitration under § 1401(a).* In other words, § 1401(b)(1) has *no* application to cases in which an employer has requested arbitration.[2] Section 1401(d), on the other hand, does have application in cases where an employer requests arbitration. Subsection (d) contemplates payments "by an employer in accordance with the determinations made under this part *until* the arbitrator issues a final decision." (emphasis added).

The application of either subsection clearly depends on whether arbitration has been requested: If arbitration *has not* been requested, then § 1401(b)(1) applies: If arbitration *has* been requested, then § 1401(d) applies. Thus, as we read them, the subsections are not inconsistent because each applies under different circumstances.[3] Moreover, it would be anomalous for a Congress so concerned with the continued vitality of multiemployer plans to intend the result suggested by Southland (*viz.* the suspension of payments by withdrawing employers who have initiated arbitration). This court's reading of § 1401 is consistent with the congressional policy behind MPPAA and the interim regulations promulgated by the PBGC. *See* 29 C.F.R. § 2644.2(c)(2). As previously mentioned, the MPPAA provides an employer with significant incentives to honor its contractual obligations to a pension fund. This Court declines to disturb the rational decisions made by Congress to protect the security of pension plans. *Board of Trustees v. Ceazan,* 559 F.Supp. 1210 (N.D.Cal.1983); *Retirement Fund v. Lazar-Wisotzky,* 550 F.Supp. 35, 36 (S.D.N.Y.1982) *aff'd* 738 F.2d 419 (2d Cir.1984).

---

**2.** In its discussion of the changes resulting in ERISA after the enactment of the MPPA our court of appeals noted that "[u]nder MPPA an employer who withdraws must immediately begin to pay a fixed and certain debt owed to the plan." *Peick, supra,* at 1255

**3.** The internal scheme of subsection (b) supports this conclusion. The subsection is titled "alternative collection proceedings". Subsection (b)(1) applies where "no arbitration proceeding has been initiated." Subsection (b)(2) presents an alternative "[u]pon the completion of arbitration proceedings."

██ Southland further argues that the Plan is required to exhaust its administrative or arbital remedies under MPAA before proceeding under §§ 1401 and 1451 for payments pending arbitration. This argument is without merit. If the application of the exhaustion doctrine suggested by Southland is accepted, then the requirements for payment pending arbitration contained in § 1401(d) are rendered inoperative. Congress is unlikely to have intended such a result.

Further, in seeking to compel Southland to make interim payments, the Plan is not attempting to make an end run around the arbitration procedures provided by § 1401(a). The Plan seeks construction and enforcement of a separate statutory right provided by §§ 1399(c)(2) and 1401(d). Therefore, because we read these sections as clearly requiring interim payments by a withdrawing employer pending an arbitrator's decision, there can be no exhaustion issue in this case. *See I.A.M. National Pension Fund v. Stockton Tri Industries*, 727 F.2d 1204, 1209–11 (D.C.Cir.1984).

The constitutional arguments raised by Southland are not persuasive. The MPPAA has survived attack under the due process clause and the seventh amendment. *E.g., Republic supra,* at 642; *Peick, supra,* at 1277. *See also Ceazan, supra,* at 1216–18; *Lazar-Witsotzky, supra.* at 37. The motion to dismiss is therefore denied.

IT IS SO ORDERED.