We reverse Elias' conviction with directions to dismiss the indictment.[12]

REVERSED AND REMANDED.

**NEW YORK STATE TEAMSTERS CONFERENCE PENSION & RETIREMENT FUND, by its trustees, T. Edward Nolan, Curtis Gundersen, Richard Muller, Rocco F. DePerno, Paul E. Bush, and Jack Canzoneri, in their representative capacities, Plaintiff–Appellee,**

v.

**McNICHOLAS TRANSPORTATION COMPANY, Defendant–Appellant.**

**No. 870, Docket 87–9018.**

United States Court of Appeals, Second Circuit.

Argued March 31, 1988.

Decided May 24, 1988.

Wade B. Cowan, Nashville, Tenn. (Cowan & Cowan, Nashville, Tenn., on the brief), for defendant-appellant.

---

Peter P. Paravati, Jr., Utica, N.Y., for plaintiff-appellee.

Gary M. Ford, General Counsel, Washington, D.C. (Peter H. Gould, Asst. General Counsel, James J. Armbruster, Washington, D.C., of counsel), filed a brief for Pension Benefit Guar. Corp. as amicus curiae on behalf of plaintiff-appellee.

Before TIMBERS and KEARSE, Circuit Judges, and WEXLER, District Judge.*

KEARSE, Circuit Judge:

Defendant McNicholas Transportation Co. ("McNicholas" or the "Company") appeals from a final judgment of the United States District Court for the Northern District of New York, Howard G. Munson, *Chief Judge*, ordering the Company to pay accelerated withdrawal liability to plaintiff New York State Teamsters Conference Pension and Retirement Fund (the "Fund") pursuant to the Multiemployer Pension Plan Amendments Act ("MPPAA" or the "Act"), 29 U.S.C. § 1381 *et seq.* (1982 & Supp. III 1985). The court granted the Fund's motion for summary judgment on the ground that the Company had failed to demand arbitration of disputed fact issues within the time allowed by the Act and hence had no right to contest its withdrawal liability. On appeal, the Company contends principally that there were no disputed issues of fact and that the court should thus have proceeded to consider its legal defenses to the Fund's assessment of withdrawal liability. We disagree and affirm the judgment of the district court.

## BACKGROUND

During the period in question, McNicholas was a freight company operating in New York, Ohio, and Pennsylvania. In New York, the Company was party to a collective bargaining agreement with Teamsters Local Union No. 449. That agreement required the Company to make contributions to the Fund, a multiemployer pension fund sponsor, on behalf of the Company's employees in New York.

In Pennsylvania, the Company's employees were represented by Teamsters Steelhaulers Local Union 800 of Pittsburgh. On September 7, 1982, negotiations for a new collective bargaining agreement with Local 800 broke down, and Local 800 went on strike, closing down Company operations in the Pittsburgh area. There was no strike at the site of the Company's New York operations. Shortly thereafter, however, the Company ceased to make contributions to the Fund on behalf of the New York employees.

In February 1983, the Fund notified McNicholas that the Fund had determined that the Company had incurred withdrawal liability under the MPPAA. The Company responded that it was exempted from withdrawal liability by 29 U.S.C. § 1398(2) because the labor dispute with the Pittsburgh union was the sole reason it had ceased to make contributions to the Fund for the New York employees. The Fund notified the Company that it rejected this contention. On April 29, 1983, responding to the Company's request for reconsideration, the Fund again informed McNicholas that it rejected the Company's invocation of the labor-dispute exemption, stating that the Pittsburgh labor dispute did not affect the Company's New York operations.

On July 1, 1983, the Company demanded arbitration of the matter. Arbitration was never commenced, and the Fund brought the present action in 1984, seeking accelerated payment of the total amount of the Company's outstanding withdrawal liability under the MPPAA. The Company sought to establish that it had ceased contributions to the Fund solely because of the labor dispute in Pittsburgh and that 29 U.S.C. § 1398(2) thus exempted it from withdrawal liability.

In a thorough and well reasoned opinion, reported at 658 F.Supp. 1469 (1987), Chief Judge Munson granted summary judgment in favor of the Fund. The court noted that

* Leonard D. Wexler, Judge of the United States District Court for the Eastern District of New York, sitting by designation.

the MPPAA requires arbitration of fact disputes, that there were "unresolved questions of fact concerning whether the Pittsburgh strike was in any way causally related to defendant's decision to cease its operations in New York and to stop making contributions to the Fund," *id.* at 1474, and that the Company had not demanded arbitration within 60 days of the Fund's final communication of its determination of the Company's withdrawal liability. The court concluded that the Company's arbitration demand was untimely and that its failure to make a timely demand precluded judicial review of the Fund's determination that the labor-dispute exemption was inapplicable to the Company's action.

Judgment was entered in favor of the Fund, and this appeal followed.

## DISCUSSION

On appeal, the Company contends principally that the only dispute concerned issues of statutory interpretation, not questions of fact, and that it was not required to demand arbitration of issues of statutory interpretation. We reject the contention that there was no disputed question of fact, and we thus affirm the decision of the district court.

The MPPAA was enacted by Congress in 1980 to safeguard the growth and viability of multiemployer pension plans by preventing an employer from withdrawing from such a plan and leaving it without funds to pay vested pensions. Under the Act, an employer who withdraws from such a plan is required to pay a withdrawal liability, calculated by the plan sponsor in accordance with a statutory formula. 29 U.S.C. §§ 1381, 1382, 1399(b)(1). Section 1398, however, invoked by the Company in the present case, provides that "an employer shall not be considered to have withdrawn from a plan solely because— ... an employer suspends contributions under the plan during a labor dispute involving its employees." 29 U.S.C. § 1398(2). The purpose of this exemption is to protect an employer from the threat of withdrawal liability when it has temporarily suspended contributions because of a labor dispute.

*See, e.g., Combs v. Adkins & Adkins Coal Co.,* 597 F.Supp. 122, 126 (D.D.C.1984) (where " 'cessation ... was precipitated by a labor dispute,' " quoting 126 Cong.Rec. 23,038); *I.A.M. National Pension Fund, Benefit Plan C v. Schulze Tool & Die Co.,* 564 F.Supp. 1285, 1295 (N.D.Cal.1983) (cessation "because of a labor dispute").

Section 1401(a) provides that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1). Notwithstanding the broad language of this section, we have ruled that a matter need not be submitted to arbitration where the only disputes concern constitutional questions or, in some circumstances, statutory interpretation. *See T.I. M.E.–DC, Inc. v. Management–Labor Welfare & Pension Funds, of Local 1730,* 756 F.2d 939, 945 (2d Cir.1985) ("*T.I.M.E.–DC– Management*") (exhaustion of the arbitration requirement not required where no questions of fact were raised and the question of statutory interpretation at issue was outside the scope of issues Congress directed to the arbitrator); *see also Marvin Hayes Lines, Inc. v. Central States, Southeast and Southwest Areas Pension Fund,* 814 F.2d 297, 300 (6th Cir.1987) (arbitration not required with respect to facial constitutional attack on the statute); *Flying Tiger Line v. Teamsters Pension Trust Fund,* 830 F.2d 1241, 1253–55 (3d Cir.1987) (arbitration may be bypassed in rare cases, such as where only questions of statutory interpretation arising outside MPPAA sections 1381 through 1399 are present). We have made clear, however, that where there is any factual dispute, the policies of the exhaustion doctrine are clearly implicated and, barring extraordinary circumstances, arbitration of that dispute is required: "[t]he Act subjects to arbitration factual issues the resolution of which is necessary to calculate withdrawal liability.... Disputes over these issues are not subject to judicial decision." *T.I.M. E.–DC–Management,* 756 F.2d at 945.

To the extent that McNicholas contends it is entitled to have its unarbitrated labor-dispute defense adjudicated "even assuming that the court ... would be required to make some factual findings" (McNicholas brief on appeal at 12), that contention is foreclosed by our decision in *T.I.M.E.–DC–Management.*

■ To the extent that the Company contends instead that it was not required to request arbitration because there was no dispute of fact, we disagree because its basic premise is untenable. Plainly a factual dispute arose when the Company argued to the Fund that it had ceased payments to its New York employees solely because of the strike in Pittsburgh and the Fund responded that one had nothing to do with the other. Any contention that this did not constitute a factual dispute is frivolous. Thus, the district court aptly found that there were unresolved questions of fact as to whether there was any causal relationship between the labor dispute in one part of the Company's operations and its cessation of contributions in another where there was no labor dispute.

The Company contends that this ruling was erroneous because Company "affidavits demonstrate[d] that the only reason the company ceased contributing to the Fund was the labor dispute between the company and the [Pittsburgh] Union" (McNicholas brief on appeal at 7), and the Fund did not present the court with evidentiary materials akin to those required to defeat a motion for summary judgment, *see* Fed.R.Civ.P. 56(e). Thus, the Company argues that the Fund was not entitled to rest on an "unsworn denial of a fact proved by the company." (McNicholas reply brief at 5.) We reject the notion that summary judgment principles, which govern adjudications by the court, were applicable here. The Company simply was not entitled to "prove[ ]" its factual assertions to the court, for, under the Act, any factual dispute could be resolved only by arbitration. And though the Company's affidavits might be found by an arbitrator to be sufficient to establish the fact of causation, they could not eliminate the existence of the factual dispute.

McNicholas's reliance on *T.I.M.E.–DC, Inc. v. New York State Teamsters Conference Pension & Retirement Fund,* 735 F.2d 60 (2d Cir.1984) (per curiam), *aff'g* 580 F.Supp. 621 (N.D.N.Y.1984) (Miner, *D.J.*), for the proposition that arbitration was not required here, is misplaced. In that case there concededly was no issue as to the reason for the employer's cessation of contributions; the defendant fund had contended that withdrawal liability attached upon any cessation of contributions, " 'regardless of reason,' " 580 F.Supp. at 629; *see id.* at 623, and thus there was no need for any factfinder to determine whether the cessation had occurred " 'because of a labor dispute,' " *id.* at 629 (quoting *I.A.M. National Pension Fund, Benefit Plan C v. Schulze Tool & Die Co.,* 564 F.Supp. at 1295). The other cases relied on by the Company are no more pertinent or persuasive.

Finally, we reject the Company's request that, if we conclude there are factual disputes, we send the parties to arbitration. The Act places a time limitation on the availability of arbitration. Where the employer has requested that the sponsor reconsider the liability determination and the sponsor has responded to that request, if there is no pursuit of arbitration jointly by employer and sponsor, arbitration is allowed only if the employer's request for arbitration was made within 60 days of the sponsor's response. 29 U.S.C. § 1401(a)(1)(A). Subsection (b) of § 1401 provides that "[i]f no arbitration proceeding has been initiated pursuant to subsection (a) of this section, the amounts demanded by the plan sponsor under section 1399(b)(1) of this title shall be due and owing...." 29 U.S.C. § 1401(b).

■ As the Company concedes, its request for arbitration was not made until 63 days after the Fund's response to McNicholas's request for reconsideration. Under the terms of the statute, therefore, since there was no joint request for arbitration, the Company's withdrawal liability has become fixed. We will not disregard the

clear language of the statute in order to relieve the Company of the consequences of its failure to meet the time limitations imposed by the Act.

## CONCLUSION

We have considered all of the Company's contentions on this appeal and have found them to be without merit. The judgment of the district court is affirmed.